318 P.2d 637

Lester A. JONES, d/b/a Engine & Air Service, Plaintiff and Respondent,

v.

O. C. ALLEN, d/b/a O. C. Allen Company, Defendant and Appellant.

No. 8709.

Supreme Court of Utah.

Dec. 2, 1957.

Gustin, Richards, Mattsson & Evans, William S. Richards, Salt Lake City, for appellant.

King & Hughes, Salt Lake City, for respondent.

WORTHEN, Justice.

Plaintiff, a truck repairman, ordered two barrels of oil from defendant which the jury found to be different from and inferior to the oil ordered. Plaintiff ordered oil specified as 200 Kendall S.A.E. 140 gear lubricant, but received much thinner oil. Plaintiff used the oil in two trucks and damage resulted. Plaintiff sued to recover for breach of implied warranty. Sec. 60-1-14, U.C.A.1953 provides:

"Implied warranty in sale by description.—Where there is a contract to sell or a sale of goods by description, there is an implied warranty that the goods shall correspond with the description, and if the contract or sale is by sample as well as by description, it is not sufficient that the bulk of the goods corresponds with the sample, if the goods do not also correspond with the description."

The jury answered five special interrogatories in favor of plaintiff and returned a verdict for $1,168.86. The jury found:

1. That the oil delivered was not 200 Kendall S.A.E. 140.

2. That plaintiff relied on the oil being 200 Kendall S.A.E. 140.

3. That the use of the oil delivered caused damage to two trucks.

4. That under all the circumstances an ordinarily prudent truck repairman would have relied on the oil as being 200 Kendall S.A.E. 140.

5. That the damage would not have occurred if 200 Kendall S.A.E. 140 oil had been used.

The trial court entered judgment on the verdict and defendant appeals and assigns error as follows:

(a) The court improperly instructed the jury as to the burden of proof on the question of whether a prudent repairman would have discovered that he had received the wrong oil;

(b) Defendant should have been protected by the doctrine that goods sold in a sealed container with the factory label are only warranted to be manufactured by a reputable manufacturer;

(c) Plaintiff should have been barred from recovery because he inspected the oil before he used it, and

(d) A letter from the Kendall Company to defendant should not have been admitted in evidence because it was hearsay.

As to the first assignment it should be observed that the court submitted the five special verdicts to the jury in the form of A and B propositions as follows: (without the "X's")

"Group No. 1.

"Proposition (a)   The defendant sold to the plaintiff, two barrels of oil other than 200 Kendall S.A.E. 140.    X

"Proposition (b)   The oil defendant sold to plaintiff in 1955 was 200 Kendall S.A.E. 140.    ——

"Group No. 2.

"Proposition (a)   The plaintiff used the said oil in the two trucks referred to as R 190 and R 191 in reliance on the representation of the defendant that it was 200 Kendall S.A.E. 140.    X

"Proposition (b)   The plaintiff used the said oil in the said trucks without reliance on the defendant's representations that it was 200 Kendall S.A.E. 140.    ——

"Group No. 3.

"Proposition (a)   The use of said oil caused damage to the said trucks.    X

"Proposition (b)   The said oil did not cause any damage to the said truck.    ——

"Group No. 4.

"Proposition (a)   Under all of the conditions surrounding the sale and purchase of the said oil, and ordinary, prudent truck repairman would not have relied on the said oil as being 200 Kendall S.A.E. 140.    ——

"Proposition (b)   Under all of the conditions surrounding the sale and purchase of the said oil, an ordinary prudent truck repairman would have relied on the said oil as being 200 Kendall S.A.E. 140.    X

"Group No. 5.

"Proposition (a)   The said damage to the trucks would have occurred with the use of 200 Kendall S.A.E. 140 oil.

"Proposition (b)   The said damage would not have occurred to the said trucks with the use of 200 Kendall S.A.E. 140 oil.     X"

In its instruction No. 2 the court advised the jury as to which party had the burden of proof on the several propositions. That instruction was as follows:

"The plaintiff has the burden of proving each proposition lettered (a) of Groups 1, 2 and 3 by a preponderance of the evidence before you can adopt each respective proposition as part of your verdict by placing a cross thereafter.

"The defendant has the burden of proving each proposition lettered (a) of Groups 4, and 5, by a preponderance of the evidence before you can adopt each respective proposition as part of your verdict by placing a cross after it * * *."

The jury marked the verdicts as indicated by the "X's" above.

Defendant complains that by Special Verdict Group 4 and instruction No. 2 the court improperly instructed the jury as to the burden of proof; that the court placed upon the defendant the burden of proving that an ordinarily prudent truck repairman would not have relied on the said oil as being 200 Kendall S.A.E. 140. We think the court properly placed upon defendant this burden.

Defendant contends the plaintiff, having alleged reliance, which is one of the elements to be proved by plaintiff, had the burden of showing such reliance.

The court charged the jury that plaintiff had the burden of proving Proposition (a) of Group No. 2, which proposition stated that plaintiff used the said oil in reliance on the representation of the defendant that it was 200 Kendall S.A.E. 140.

Plaintiff had the burden of proving that he relied on the representation of Allen. Likewise, the affirmative defense set up by Allen that an ordinarily reasonable and prudent repairman would not have relied on such representation was a proposition which required Allen to assume the burden with respect thereto.

Plaintiff alleged only that he relied on the representation that the oil delivered was 200 Kendall S.A.E. 140. He did not allege that as an ordinary, reasonable and prudent repairman he was justified in such reliance.

Defendant set up as an affirmative defense that plaintiff's reliance on the oil being 200 Kendall S.A.E. 140 was not justified; that an ordinary, reasonable and prudent repairman would not have relied on Allen's representation that it was 200 Kendall S.A.E. 140.

Defendant confuses reliance with the right to rely. Plaintiff had the burden of proving that he did rely and the court so instructed the jury. Defendant had the burden of proving that plaintiff was not justified in relying on the representation that he was furnished what was ordered (by description) to-wit, 200 Kendall S.A.E. 140.

We find no merit to defendant's complaint as to instructions given and requested instructions refused.

■ Defendant labors the proposition that the oil in question was not represented as being fit for the use for which plaintiff desired the oil. Plaintiff ordered a particular oil by description—200 Kendall S.A.E. 140. Plaintiff did not ask defendant if the oil delivered was suitable for a particular use. All plaintiff required of defendant was that he be furnished with the oil ordered. The court did not charge the jury that defendant made any specific representations as to the fitness of the oil for the use to be made of ·it. The jury found that defendant sold oil other than that ordered. Defendant was not charged

with an implied warranty of fitness of the oil for the use to which it was to be put. Plaintiff asked only for 200 Kendall S.A.E. 140. If he received that, he was satisfied. His experience satisfied him that if he got what he ordered he would get what he needed.

■ As to (b) it does not appear that this container was such a sealed container as to come under the protection of the sealed container doctrine. The container in question had a metal lid which crimped onto the barrel; and the lid could be taken off with pliers and put back on and no one would realize that it had been removed. The barrel was not a sealed container in the sense that it came directly from the manufacturer in a sealed container which no one could alter without disclosing that fact.

■ As to (c) this question was answered by the jury's finding that an ordinarily prudent truck repairman would have used this oil as 200 Kendall S.A.E. 140 after looking at it and noticing that it was thinner than usual. There was evidence that it is impossible to determine the weight of the oil by merely looking at it. Nevertheless, the proposition presents a close question. Although we might have found that under the evidence Jones was negligent in using the oil which he recognized as being thin, without making further inquiry or tests; however, since

the jury found otherwise, we are not disposed to disturb that finding.

■ As to (d) we are of the opinion that the court committed no error in admitting in evidence a letter from the Kendall Company to defendant because it was hearsay.

Some time after the damaged trucks were returned to plaintiff's shop he notified defendant that there was something wrong with the oil. In response to plaintiff's call, defendant went to plaintiff's shop. They inspected the parts of the trucks in question and defendant took a sample of the oil from a pan in the Jones garage lying near one of the trucks and sent the sample to the Kendall Oil Company.

Defendant received a letter which in substance and effect stated that the sample submitted was not representative of Kendall 200 gear lubricant. A portion of that letter was as follows:

"Our laboratory report, number 56156, found the gear lube sample to be an SAE 90 EP Gear Lubricant with a viscosity index of only 89.6. In other words, the sample submitted to us was not representative of Kendall No. 200 Gear Lube, which had been reported as having been used in the above mentioned rear axle."

Defendant contends that the letter was hearsay and not admissible; however, we

are of the opinion that the letter was admissible. Both Jones and Allen were interested in determining the cause of the damage to the two trucks in which the oil in question was used. Together they concluded that a sample should be sent to the manufacturer. Both were interested in the result of the inspection by Kendall.

Professor Wigmore observes:

"If a party, instead of expressing his belief in his own words, names another person as one whose expected utterances he approves beforehand, this amounts to an anticipatory adoption of that person's statement; and it becomes, when made, the party's own." [1]

It is further observed by the same author:

"The written statements of a *third person* may be so dealt with *by the party* that his assent to the correctness of the statement may be inferred, and they would thus by adoption become his own statements."[2]

Defendant vigorously contends that there is nothing in the letter to indicate how the examination of the oil was made and that certain material facts are missing, which facts cannot be put before the court and jury as the writer is not in court subject to cross-examination. Defendant further observes that the letter offered in evidence

1. Wigmore on Evidence, Third Edition, Vol. IV, Sec. 1070, p. 69.

2. Wigmore on Evidence, Third Edition, Vol. IV, Sec. 1073, p. 89.

to prove the facts asserted therein is an out-of-court statement, not subject to cross-examination and not under oath, and is hearsay.

It may be observed that defendant was not required to send the sample to Kendall and obtain their advice as to the sample being representative of Kendall 200. If defendant was interested in how the oil was to be examined, such fact should have been submitted along with the sample.

But Exhibit 12, a copy of the letter sent to Kendall, written on defendant's letterhead, specifically requested Kendall to advise Mr. Jones as to its findings. That copy reads as follows:

"Feb. 6, 1956.
"Kendall Refining Co.
"Bradford, Penn.
"Attention Mr. Osbourne.
"Dear Sir:

"The Air & Engine Service Co. of this city have been having trouble with Kendall Gear lube and I am sending you a sample of the Gear Lube taken from one of the rear ends for your inspection.

"Mr. Less Jones owner of the Air and Engine Service was previously manager of the shop of Interstate Motor Lines for many years and has always been a booster of Kendall.

"In the last three weeks one of his accounts has had four rear ends go while working on an easy hall. These trucks are twin screw Internationals and have 28 M Eaton rear ends. They have all been filled with Kendall Gear Lube No. 200.

"I would appreciate it if you would follow thru on this *and advise either Mr. Jones or myself of your findings. His address is 1145 Richards St.*

"Thanking you for your attention to this matter, I am,

"Very truly yours" (Emphasis added.)

The letter in reply is the letter objected to as hearsay. That letter, Exhibit 11, is dated Feb. 17, 1956, and states that the sample of gear lubricant taken from one of the Eaton, model 28 M, dual, double reduction rear axle assemblies from a unit owned and operated by The Air & Engine Service Company had been received. We find no merit to the objection under the circumstances here presented. Exhibit 12 is a circumstance tending to guarantee the trustworthiness of the contents of Exhibit 11.

Judgment affirmed. Costs to plaintiff.

McDONOUGH, C. J., and CROCKETT and WADE, JJ., concur.

HENRIOD, J., concurs in result.