Thomas Richard COURTNEY, Appellant,

v.

Patricia M. COURTNEY, Appellee.

No. 2381.

Supreme Court of Alaska.

Nov. 7, 1975.

Peter LaBate, Anchorage, for appellant.

LeRoy J. Barker and Abigail G. Dodge, of Robertson, Monagle, Eastaugh & Bradley, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and BURKE, JJ.

BOOCHEVER, Justice.

Thomas Courtney (the plaintiff below) appeals from a divorce decree, alleging that the court, in dividing the assets of the parties, improperly relied on a certain financial statement and unjustly imposed the entire tax liability of the parties on him. Specifically, he makes the following contentions: that the financial statement was based on hearsay testimony; that it was prepared two months prior to the separation of the parties so that it was not current; that it did not represent a fair evaluation of the worth of the parties' assets at the time of separation; and that the court abused its discretion by not increasing the value of Mr. Courtney's premarital property by the amount it appreciated during the period of the marriage.[1]

In dividing the property, the trial judge relied primarily on a financial statement, referred to as the Johnson-Morgan report, prepared for the Courtneys by Arthur Timm of the Johnson-Morgan accounting firm. The report was prepared on June 28, 1973 to be used by the Courtneys in connection with an application for a loan from the Alaska State Bank. The accounting indicated that the net worth of the parties was $107,464.00. The court deducted from that sum $34,000.00 which it

found to be the value of property owned by Mr. Courtney at the time of the marriage and awarded Mrs. Courtney one-half of the difference between these two sums, $36,732.00. The judge, however, assessed the $11,000.00 owing in back taxes against Mr. Courtney on the rationale that he retained the service station which was the only income-producing property of the parties.

■ The contention that the Johnson-Morgan report is inadmissible for the reason that it is based on information obtained by hearsay would have merit[2] were it not for the fact that it was used by Mr. and Mrs. Courtney for the purpose of obtaining a loan. It is well settled that when by use one adopts the written statement of a third person as his own, it may be admitted in evidence as an admission.[3] This applies even to information based on hearsay, as it may be assumed that the user of the writing informed himself of its contents.[4]

■ Mr. Courtney argues that because the financial statement was compiled on the basis of information furnished by Mrs. Courtney, it is not admissible against him as an adoptive admission. In addition, Mr. Courtney argues that absent his signature on the financial statement, there is no proof that he adopted that statement as his own or used it in such manner as to be held to have adopted it.[5] In support of his contention that absent his signature there can be no proof of adoption, Mr. Courtney

---

1. One child was born as an issue of the marriage which lasted approximately six years. There is no dispute over the provisions of the decree that Mrs. Courtney would retain custody of the couple's one child with Mr. Courtney having reasonable visitation rights, and that Mr. Courtney was to pay $150.00 per month as child support.

2. *Rego v. Decker*, 482 P.2d 834, 841 (Alaska 1971) ; *Pollock v. Pollock*, 7 Wash.App. 394, 499 P.2d 231, 238 (1972).

3. IV Wigmore, Evidence in Trials at Common Law, § 1073 at 138–40; (Chadbourne Rev. 1972) ; *Oxley v. Linnton Plywood Assoc.*, 205 Or. 78, 284 P.2d 766 (1955) ; *Jones v. Allen*, 7 Utah 2d 79, 318 P.2d 637 (1957).

4. McCormick on Evidence, § 263 at 632 (2nd ed. 1972) ; Wigmore, *op. cit.*, § 1053.

5. Mr. Timm testified that the Courtneys requested the firm of Johnson and Morgan to prepare the report to be used in applying for a loan from the Alaska State Bank, and Mr. Courtney testified that he and his wife received a loan in the amount of $15,000 from that bank. From this testimony, the trial court could have drawn a reasonable inference that the statement was used, and thus adopted by Mr. Courtney, in obtaining the loan. *Hendricks v. Knik Supply, Inc.*, 522 P.2d 543, 547 (Alaska 1974).

relies on the appendix to *Stroh v. Alaska State Housing Authority*, 459 P.2d 480 (Alaska 1968), where we set forth the superior court's findings of fact and conclusions of law. There the superior court was confronted with a similar problem. Mrs. Stroh signed a document which contained appraisal values of various pieces of personal property. An agent of the Housing Authority told Mrs. Stroh, prior to her signing, that she was required to do so, but that it was a mere formality and did not indicate concurrence in the appraised value. Of this appraisal signed by Mrs. Stroh, the trial court said:

> . . . I also construe her having signed the appraisal by the agency (Ex. B) as having some weight as an admission by her of the value of the items enumerated. While she did not, according to her testimony and that of Mr. Foster, necessarily accept those values as binding, and had the opportunity to have the valuation reviewed with her attorney, she acknowledged the appraisal in writing, and must be held to have made a representation of the correctness thereof, even though, as I hold, she is not precluded from claiming other property taken or damaged by the appellee.[6]

The signing of the appraisal by Mrs. Stroh, particularly with the qualification that she did not necessarily accept the values as binding, would constitute no more of an admission than the submission to the bank by Mr. Courtney of the Johnson-Morgan report, prepared in part at his request.

A signature is not an essential prerequisite to finding an adoptive admission. As Dean Wigmore states:

> The party's use of a document made by a third person will frequently amount to

an approval of its statements as correct and thus it may be received against him as an admission by adoption.[7]

The court did not err in admitting the report into evidence.

Mr. Courtney also contends that the report did not represent a fair evaluation of the parties' assets at the time of separation. The report was prepared on June 28, 1973, and the parties separated on August 30, 1973. Testimony was elicited from Mr. Timm that the parties' business checking account balance was $7,124.00 at the date of the financial report and $2,890.20 on September 8, 1973, soon after the separation.

Such a drop in cash by itself, however, is meaningless unless it is shown not to be related to payment of debts of the couple or the acquisition of additional assets. In either of such events, the net worth would not be affected. The admissibility of evidence because of remoteness is largely within the discretion of the trial court; and in the absence of an abuse of that discretion, will not be overturned on appeal.[8] We find no such abuse of discretion here.

Even if the Johnson-Morgan report was properly admitted into evidence, Mr. Courtney argues that the court's use of the exhibit constituted an abuse of discretion resulting in a clearly unjust division of property. In addition to the report, the trial judge had the testimony of Mr. Courtney and his accountant, Mrs. Cutshall. Mrs. Cutshall's testimony pertained to the evaluation of Lots 1, 2 and 3 of the Haugen subdivision, essentially the service station, and was based on the borough appraisal records indicating a value of $48,000.00 in 1973. Mr. Courtney evaluat-

6. 459 P.2d at 486.

7. IV Wigmore, Evidence in Trials at Common Law, § 1073 at 138 (Chadbourne Rev. 1972).

8. *Barbuscia v. Reading Co.*, 295 F.2d 236, 237 (3rd Cir. 1961); *Miller v. Alexandria Truck Lines, Inc.*, 273 F.2d 897, 900–01, *opn. corr. & reh. denied*, 274 F.2d 942 (5th Cir. 1960); *Atlantic Coast Line R. Co. v. Pidd*, 197 F.2d 153, 156 (5th Cir. 1952), *cert. denied*, 344 U.S. 874, 73 S.Ct. 166, 97 L.Ed. 677 (1952); *Oklahoma City v. Moore*, 491 P.2d 273, 277 (1971); *Marshall v. Martinson*, 518 P.2d 1312, 1315 (1974); *Pure Gas & Chemical Co. v. Cook*, 526 P.2d 986, 992 (1974).

ed this property at $52,000.00 as of the date of separation. The Johnson-Morgan report estimated the land to be worth $48,750.00, the trailer located on it at $18,000.00 and the service station with fixed assets at $26,866.00—a total of $93,616.00. Other discrepancies between Mr. Courtney's evaluation of assets and the value ascribed by the Johnson-Morgan report are negligible.

■ The court accepted Mr. Courtney's evaluation of the service station property at the time of the marriage as $34,000.00. The Johnson-Morgan report thus indicated an increase in value over the five-year period of almost $60,000.00. Included in this increase was the value of the mobile home listed as $18,000.00 in the report and evaluated by Mr. Courtney at $14,000.00 plus improvements made to the station including the addition of tanks, pumps, a cement island and canopy as well as the paving of the lots. When these factors together with appreciation over the period are considered, we cannot hold that the trial court's findings were clearly erroneous.[9]

■ Finally, Mr. Courtney alleges that the trial court erred in placing on him the financial burden of payment of the $11,000.00 balance of a loan obtained to pay back taxes. He contends that Mrs. Courtney should have been required to pay half of that sum. Initially, we note that the Johnson-Morgan report indicated as liabilities the amount of $27,644.00 due for back taxes and $4,300.00 income taxes for 1973. We, therefore, cannot be certain that the $11,000.00 amount was not included

in this indebtedness.[10] The trial court concluded that since Mr. Courtney retained the only income-producing property, he should be responsible for the debts of the parties. Assuming that Mr. Courtney received credit in the accounting for payment of the debts, it was certainly within the court's discretion to specify that he pay those debts.

The parties, however, regard the $11,000.00 as an additional debt not encompassed in the Johnson-Morgan report. Even under such an assumption, we hold that it was in the court's discretion to order Mr. Courtney to make this payment, though it would result in an unequal division of the assets of the parties.

Mr. Courtney argues that payment of the $11,000.00 involved an improper invasion of the value of the service station property which he brought into the marriage. Again, this argument is on a dubious factual foundation. According to the Morgan-Johnson report, the couple's net assets at the time of separation amount to $107,464.00. The agreed value of the service station property at the time of marriage was $34,000.00. Deducting Mrs. Courtney's share of one-half of the difference between these figures, $36,732.00 and the $11,000.00 in debts to be paid by Courtney would still leave him $25,732.00 in excess of the $34,000.00 value he brought into the marriage.

■ Even assuming that there is an invasion of his premarital assets, we find no error under the circumstances here involved. AS 09.55.210(6) [11] authorizes the

9. We shall not set aside a trial court's finding of fact unless clearly erroneous. *Moran v. Holman,* 514 P.2d 817, 818 (Alaska 1973).

10. The 1973 taxes eventually totalled $7,800.-00 according to Mr. Courtney, but additional income would have been earned during the balance of the year after June 28, the date of the report.

11. As 09.55.210(6) specifies:
In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide (6) for the division between the parties

of their property, whether joint or separate, acquired only during coverture, in the manner as may be just, and without regard to which of the parties is in fault; however, the court, in making the division, may invade the property of either spouse acquired before marriage when the balancing of the equities between the parties requires it; and to accomplish this and the judgment may require that one or both of the parties assign, deliver, or convey any of his or her real or personal property to the other party;

trial court to invade the premarital property of a spouse where a division solely of property acquired during coverture would be unjust.[12] The trial court in its opinion stated that "equity may possibly be achieved without an invasion, or at least a substantial invasion, of the property of the plaintiff owned by him prior to the marriage", indicating that an insubstantial invasion of such property might be necessary.

We have held that the principal considerations in determining questions of divisions of property are

> the respective ages of the parties, their earning ability, the duration and conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances, including the time and manner of acquisition of the property in question, its value at the time and its income producing capacity if any.[13]

With those considerations in mind, we could not hold that the trial court in this case would have abused its discretion in invading the premarital assets of Mr. Courtney.

We consider the following facts to be particularly significant in justifying such an invasion of Mr. Courtney's premarital property. Mrs. Courtney was awarded custody of the child and allowed $150.00 as child support. She received no alimony.

If she were to be employed, some type of child care arrangement would be required, and it is obvious that monthly support payments would be totally inadequate. Further, her earnings when employed during the period between October 20, 1973 and March 5, 1974 totalled $2,456.77 or slightly more than $500 per month. The service station registered a net profit of $41,423.00 for the year 1972, indicating that Mr. Courtney's earning ability was over five times that of Mrs. Courtney's. Thus, considering their respective earning capabilities, the circumstances and necessities of each, their financial position and the earning capabilities of the property retained by Mr. Courtney, a partial invasion of his premarital property would not constitute an abuse of discretion.

We are further motivated by the fact that a property settlement decreed by a trial court after a full evidentiary hearing where the trial judge had the opportunity of observing the demeanor of the witnesses and parties should not lightly be set aside. We have repeatedly stated that a judicial division of property is left by the statute to the broad discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is shown. The aggrieved party must show that the property division is clearly unjust.[14] We hold that here there was no such abuse of discretion.[15]

Affirmed.

12. *Burrell v. Burrell*, 537 P.2d 1 (Alaska 1975); *Vanover v. Vanover*, 496 P.2d 644, 645 (Alaska 1972) (specifically addressing the 1968 amendments to the statute relied upon by Mr. Courtney).

13. *Merrill v. Merrill*, 368 P.2d 546, 547–48 n. 4 (Alaska 1962).

14. *Hurn v. Hurn*, 541 P.2d 360, (Alaska, 1975); *Martin v. Martin*, 530 P.2d 1386 (Alaska 1975); *Mullaly v. Mullaly*, 518 P.2d 1395 (Alaska 1974); *Moore v. Moore*, 499 P.2d 300, 304 (Alaska 1972); *Vanover v. Vanover*, 496 P.2d 644, 645 (Alaska 1972); *Crume v. Crume*, 378 P.2d 183, 186 (Alaska 1963); *McSmith v. McSmith*, 387 P.2d 454, 455 (Alaska 1963).

15. Having held that there would be no abuse of discretion to invade the husband's premarital property, in this case it is unnecessary to consider his contention that the enhancement in its value by appreciation should have been considered by the court in determining the amount of property to be set aside to Mr. Courtney.