Argued March 4, reversed with instructions April 2, petition for rehearing
denied April 27, 1976

ROBINSON et ux, *Appellants,*

*v.*

LEONARD, *Respondent.*

547 P2d 629

*Donald S. Richardson* of Richardson & Murphy, Portland, argued the cause and filed briefs for appellants.

*Rita Radich* of Toran & Radich, Portland, argued the cause and filed a brief for respondent.

O'CONNELL, C. J.

**O'CONNELL, C. J.**

This is a suit for the partition and sale of real property brought pursuant to ORS 105.205 to 105.405. Defendant Dorothy Leonard contends that the conveyance through which plaintiffs claim was void and that the title vested in her upon the death of the grantor, Walter Leonard, her husband. Plaintiffs appeal from a decree in favor of defendant.[1]

Plaintiffs Elizabeth and Tannie Robinson are the mother and stepfather of Walter Leonard. Defendant is the widow of Walter Leonard. Walter and Dorothy were married in February 1971. In February 1974, Walter retained attorney Julie Boston to file a petition for the dissolution of the marriage. On March 21, 1974, after the petition had been filed, Walter and plaintiffs went to Julia Boston's office where Walter executed a bargain and sale deed conveying the property in question to Julia Boston, who then executed a bargain and sale deed to Walter and plaintiffs so as to vest in each of them an undivided one-third interest as tenants in common. Before these conveyances were made, Walter was the sole owner of the property. On July 22, 1974, while the divorce case was still pending, Walter died intestate.

Defendant's affirmative answer alleged that prior to the conveyance of March 21, 1974, Walter became indebted to defendant in an amount in excess of $2,000; that at the time of Walter's death debts in excess of $2,500 were presented to defendant for payment out of the assets of the estate but that there were no assets or other property sufficient to satisfy these debts and the costs and expenses of administration. The answer alleges that there was no consideration for

---

[1] Defendant Benj. Franklin Federal Savings and Loan Association's interest as mortgagee is not involved in this suit.

the execution of the bargain and sale deeds. The answer then alleges as follows:

"X.

"During the last two years of his life, Leonard was addicted to the excessive use of intoxicating liquors and had become weak in mind and body and Leonard during all of said time became increasingly dependent upon and subject to the influence of the plaintiff, Elizabeth Robinson.

"XI.

"The plaintiffs took advantage of Leonard's condition and situation, by the exercise of improper and undue influence, and with the intent to hinder, delay, and defraud the Defendant of her rights in and to the afore described real property and induced, persuaded and compelled Leonard to execute the deed given to Julia L. Boston for the property."

The evidence shows that defendant received $25,000 on Walter's death as the beneficiary of a life insurance policy which Walter had carried. The evidence also shows that when defendant and Walter borrowed $1,300, this amount was added to a pre-existing mortgage indebtedness of $12,300 owed by Walter and a new note and mortgage for $13,600 was signed by both defendant and Walter. The mortgage covered the property in question.

Defendant contends that the decree of the trial court can be sustained on any one of three grounds: (1) that the transfer of a two-thirds interest by Walter to plaintiffs was in fraud of creditors; (2) that the transfer "was merely colorable to defeat the rights of his wife," and (3) that plaintiffs exercised undue influence over Walter, inducing him to execute the deeds naming them as grantees.

■ With respect to the first contention, assuming without deciding that defendant's answer is sufficient to raise the issue of a fraudulent conveyance, there was not sufficient evidence to establish the elements of

such a conveyance. Defendant did not introduce evidence to show the value of Walter Leonard's assets at the time of the transfer. It is possible that the value of Walter's one-third interest in the property in question would in itself have been great enough to discharge his indebtedness to defendant.

The second ground of the affirmative defense, that the transfer to plaintiffs "was merely colorable to defeat the rights of his [Walter's] wife" is also unsustainable.[2] Although the answer alleges that the conveyances in question were without consideration, there is no direct allegation that the conveyances were colorable as defendant now contends. Again assuming without deciding that the answer can be regarded as alleging a colorable transfer, the evidence does not support the allegation. If Walter Leonard had intended to make a colorable transfer for the purpose of depriving defendant of the property while at the same time retaining control over it for himself, it is not likely that he would have included himself as co-grantee in the conveyance from his attorney, thus retaining an interest which could inure to his wife. The mere fact that Walter intended to deprive his wife of the property is not, in itself, sufficient to set the conveyance aside. A husband may make a gift of his property as he pleases and if the gift is absolute and not colorable, his wife has no basis for setting the gift aside, and this is so even if the husband's motivation in making the gift was to deprive his wife of an interest in the property at his death or upon a dissolution of the marriage.[3]

Walter and his first wife had lived with his parents,

---

[2] We assume that defendant has used the term "colorable" to express the meaning employed by the courts which apply the test of whether the transfer is absolute or colorable, "that is whether the husband actually disposed of the property, or merely simulated a gift or transfer while retaining the use of the property during his lifetime." Annotation: Gift or other voluntary transfer by husband as fraud on wife, 49 ALR2d 521, 526 (1956).

[3] *Bosma v. Harder,* 94 Or 219, 185 P 741 (1919) supports the statement in the text.

the plaintiffs, for 35 years. According to plaintiff, Elizabeth Robinson, plaintiffs shared the expenses of running the household. She testified that plaintiffs had made some payments on the property in question. It is not unreasonable to assume that Walter Leonard intended to carry this pattern of cohabitation and cooperation one step further and create a co-ownership interest in the family group. We hold that defendant did not prove a colorable transfer.

■ Defendant's third and principal contention is that plaintiffs exercised undue influence over Walter inducing him to transfer a partial interest in the property to them. The evidence developed by defendant establishes that Walter Leonard had a "drinking problem" which affected his health and which rendered him more susceptible to the pressures which his mother exerted upon him to accede to her various demands. It was shown that Walter's manner of living was shaped in a material way by his mother; that he was at her beck and call even after his marriage to defendant. Illustrative was the occasion when, at 8:45 A.M. on the day following his marriage, he received a telephone call from his mother insisting that he come at once and take her to church, which he did. There was evidence of other incidents demonstrating that Walter had an unusually strong sense of filial obligation which he obeyed even when it was burdensome to him and discomforting to his wife. However, we do not regard this evidence of importunity as sufficient to characterize it as undue influence. Rather, we think that the recited incidents of Walter's submissiveness were the product of the more than usual close ties which bound Walter to his mother, largely, it would appear as a result of a son living in the same household with his mother for a large share of his adult life.

Aside from evidence of matriarchal pressures exerted upon Walter, there was no showing of the usual indicia of undue influence. It was not shown that plaintiffs initiated the idea of transferring an interest

in the property to them; or that Walter did not have independent advice; or that the disposition which preferred his parents to his estranged wife was unnatural or unfair, or that any of the other indicia discussed in *Reddaway v. Reddaway,* 214 Or 410, 329 P2d 886 (1958) were present.

The decree of the trial court is reversed with instructions to enter a decree in favor of the plaintiffs.