Albert GABAIG, Appellant,

v.

Dorothy GABAIG, Appellee.

Albert GABAIG and Charles P. Gabaig, Appellants,

v.

Dorothy GABAIG, Appellee.

Nos. S–502, S–92 and S–715.

Supreme Court of Alaska.

April 11, 1986.

Robert D. Frenz, Ross, Gingras & Frenz, Anchorage, for appellant Albert Gabaig.

James M. Seedorf, Hughes, Thorsness, Gantz, Powell and Brundin, Anchorage, for appellants Albert and Charles P. Gabaig.

William T. Ford, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

This opinion is the result of three cases arising out of the marriage and divorce of Albert (Husband) and Dorothy (Wife) Gabaig. In one case, Husband attacks the sufficiency of the evidence in a fraudulent conveyance action. In another, Husband challenges the trial court's property division and valuation, and its award of alimony and attorney's fees. In the last discussed, Husband appeals from the trial court's award of temporary spousal support and attorney's fees to enable Wife to prosecute her divorce action.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Wife and Husband were married in California in 1970. At that time, Wife was 44, Husband 48. Both have college degrees. It was the second marriage for both. Wife has three children from her first marriage. Husband has a son, Charles Gabaig, from his first marriage.

At the time of the marriage, Husband had approximately $60,000 cash, two cars and some stock. Wife had a house in California (Granada Hills home), a new car, $3,000 and a little stock.

Shortly after the marriage, Wife transferred her interest in the Granada Hills home to Husband and Wife as joint tenants. When the newlyweds bought a second home, they took title as joint tenants. Husband provided the down payment and Wife made the monthly payments. Notwithstanding the form of title, Wife apparently received the proceeds from the sale of the Granada Hills home and Husband kept the proceeds from a subsequent sale of the second house.

In 1971 Husband's father gave Husband a gift of real estate (Parthenia No. 1). Although Wife was under the impression that this was a gift to both of them, the grant deed named only Husband as grantee. Later that year, Husband's father died, leaving Husband a half interest in two pieces of realty (Parthenia No. 2 and gas station property) and more than $44,-500 cash. Both testified that Husband received one-half of a $2 million estate. Wife's father died the same year; she received $15,000 in insurance proceeds.

In 1972 Husband and Wife moved to Alaska. They eventually bought a lot and began building a home in Anchorage. They contributed equally to the $12,500 purchase price of the lot and a $60,000 building fund, taking title as tenants in common. This investment took substantially all of Wife's resources. They moved into the still-unfinished house in 1975.

Wife filed for divorce in 1976, apparently because she was disturbed by the amount of time and money Husband spent with his son Charles, ignoring Wife and her son Jeff. The complaint was later withdrawn.

In 1977 the parties decided to return to California. They sold the Anchorage home to Bob Schnell for approximately $90,000; Wife received about $45,000 of the proceeds. Unbeknownst to Wife, Husband provided the money used by Schnell to purchase the home. The trial court found that the funds used by Husband were marital property. Schnell held title only momentarily; he immediately conveyed the land to Husband's son Charles. When Wife discovered the truth in 1982, she began a fraudulent conveyance action to have the 1977 transfer set aside. Judge Serdahely determined that the transfer was fraudulent and ordered issuance of a clerk's deed to Husband and Wife as tenants in common. Husband appealed. These facts gave rise to the first appeal discussed in this opinion.

As above stated, the parties returned to California. In 1978 they entered into a postnuptial agreement. Under the agreement, Husband's separate property included Parthenia Nos. 1 and 2, the gas station property, and all property acquired by inheritance, which was the bulk of the property acquired during the marriage. Wife's separate property included all gifts and inheritances from her parents and premarital property. The parties acknowledged that they had general knowledge of the value of the other's property and had the opportunity to seek independent counsel. Husband agreed to provide reasonable support for Wife in the event of legal separation or divorce.

Wife testified that she was pressured into signing the agreement. Husband threatened her with divorce and abandonment and accused her of wanting his money. Although Husband's attorney advised her to seek independent counsel, Husband forbade her to do so, continuing his threats of divorce and refusing to alter the proposed agreement in any way. Wife surrendered and signed the agreement. Husband testified this was untrue.

Later that year, Husband told Wife he had repurchased the Anchorage home but placed it in Charles' name for business reasons. They returned to Alaska.

In 1981 Wife demanded that the house be put in their names and that the postnuptial agreement be set aside. Husband went to California and put all his assets into a "Gabaig Family Trust." Trust income is

payable to Husband. Upon Husband's death, Charles is the primary income and principal beneficiary, but the trustee has discretion to pay up to 50% of the income to Wife. Husband has the power to revoke the trust.

Wife filed for divorce in 1982, but again dismissed the complaint. According to Wife, Husband promised to return the home to their names, tear up the post-nuptial agreement and amend the trust. Husband denied making any such promises. Even though Husband had a power of attorney from Charles, he told Wife he could not obtain title to the Anchorage home without Charles' consent, which Charles refused. Wife filed this suit for divorce in July 1982, whereupon Husband quit the residence, recorded the power of attorney, and transferred the Anchorage home to Don Marino.[1] These facts gave rise to the second appeal discussed in this opinion.

In 1983 Wife received an interim award of $15,000 attorney's fees and $2,500 per month spousal support. That order was reduced to judgment, but Husband did not pay it. He appealed the judgment. These facts lead to the third appeal discussed in the opinion.[2]

Judge Carlson granted judgment of divorce, finding the postnuptial agreement invalid because of fraud, duress and estoppel. He further concluded that Husband used marital assets to finance the 1977 sale of the Anchorage home. He awarded Wife $2,000 per month alimony, 1/3 the value of Husband's property, and 2/3 actual attorney's fees. Husband was ordered to dissolve the Gabaig Family Trust and convey the assets to a professional trustee approved by the court. When Husband did not dissolve the trust as ordered, Judge Carlson rendered judgment for Wife for $612,000 plus interest.

## II. DISCUSSION

### THE FRAUDULENT CONVEYANCE ACTION

**A. Did the Trial Court Clearly Err in Finding that the 1977 Conveyance to Schnell was Fraudulent?**

This case arose when Wife sued to set aside the 1977 conveyance of the Anchorage home. A conveyance intended to hinder, delay or defraud creditors or other persons in their lawful suits is void. AS 34.40.010.[3] Existence of a fraudulent intent is a question of fact, often proven by circumstantial evidence. *First National Bank of Fairbanks v. Enzler*, 537 P.2d 517, 521–22 (Alaska 1975); AS 34.40.090. This court has stated that fraud is established by a preponderance of the evidence; clear and convincing proof is not required. *Saxton v. Harris*, 395 P.2d 71, 72 (Alaska

1. The transfer to Marino led to Wife's discovery of the timing of the conveyance to Charles. She then filed the separate fraudulent conveyance action against Husband, Charles, Marino and Schnell, asking the court to set aside the 1977 conveyance.

2. This case was originally argued in November, 1984. It was stayed pending completion of briefing and oral argument in the divorce and fraudulent conveyance actions. Since we have heard and decided these later cases, we can now resolve the attorney's fees case.

 This court ordered, *sua sponte,* the appeals in the attorney's fees and divorce cases consolidated. We denied a motion to consolidate these two cases with the fraudulent conveyance action, but agreed to hear oral arguments on the fraudulent conveyance and divorce actions on the same calendar.

3. AS 34.40.010 provides in pertinent part:

 A conveyance or assignment, in writing or otherwise, of an estate or interest in lands, ... made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, ... as against the persons so hindered, delayed, or defrauded is void.

 In order for the transfer to be void, Husband must have intended fraud *at the time of the transfer.* AS 34.40.010. Husband argues that post-transfer events are irrelevant to show intent at the time of the transfer, therefore this evidence is inadmissible. This argument is without merit. Evidence of post-transfer events is clearly admissible to show intent at an earlier point in time, although the probative value of the evidence decreases as the elapsed time increases. Husband's argument goes to the weight rather than the admissibility of the evidence.

1964).[4] The trial court required clear and convincing evidence of fraud, citing *Blumenstein v. Phillips Insurance Center*, 490 P.2d 1213 (Alaska 1971). However, *Blumenstein* does not require clear and convincing evidence; it merely states that, under normal circumstances, fraud is not presumed. *Id.* at 1218.[5]

Fraud is often established circumstantially with evidence of the badges of fraud.[6] The weight accorded the badges depends on the facts of each case; the badges are merely evidentiary facts tending to prove or disprove the ultimate fact—whether fraud was intended. *Enzler*, 537 P.2d at 522; *Blumenstein*, 490 P.2d at 1223. We will overturn the decision of the trial court only if it is clearly erroneous. *Enzler*, 537 P.2d at 525.

■ The evidence at trial showed the existence of some of the badges of fraud:

1. *Inadequate consideration.* The parties stipulated that Wife received approximately $45,000 from the 1977 transfer.[7] The court noted that the money was provided by Husband from marital funds. Thus one-half of the $45,000 received by Wife came from her. Assuming, as the evidence indicates, that the price of $90,000 was not itself unfair, Wife netted $22,500 from the sale rather than the $45,000 she ought to have, and thought she had received.

2. *Anticipation of pending suit.* Although there was no suit pending at the time of the conveyance, Wife argued and the trial court concluded that Husband's motive was to avoid the equitable distribution statute in case of an eventual divorce.

3. *Husband retained premises.* Although Husband and Wife moved to California from 1977–78, they lived in the house from 1978–82. Charles never exercised ownership over the property. Husband told Wife he had repurchased the home, placing it in Charles' name. In lieu of paying rent to Charles, Husband agreed to finish construction and pay insurance and taxes. Husband invested $13,000 in construction from 1978–82. In other words, Husband acted as if he were the true owner of the property.

4. *Relationship of the parties.* This is the most telling factor. It appears that Husband set out to deprive Wife of her interest in the Anchorage home, even if it meant paying her for it and moving to California temporarily. If the conveyance were valid, Charles would own the house and receive all the appreciation in its value, Wife would have nothing to leave her children when she dies, nor would she be able to claim part of the house if they divorced. The trial court concluded that Charles was under Husband's control and held title for his benefit.

■ After examining this evidence as a whole, we conclude that Wife presented sufficient evidence of fraudulent intent. Therefore, the trial court did not clearly err when it set aside the conveyance.[8]

---

4. Many other jurisdictions expressly require proof of fraud by clear and convincing evidence in fraudulent conveyance actions. *E.g., Credit Union of America v. Myers*, 234 Kan. 773, 676 P.2d 99, 106 (1984); *Furniture Manufacturers Sales v. Deamer*, 680 P.2d 398, 399 (Utah 1984).

5. Although she argued for a different standard of proof below, Wife does not appeal the application of the clear and convincing evidence standard.

6. Typical badges of fraud are:
(1) inadequate consideration, (2) transfer in anticipation of a pending suit, (3) insolvency of the transferor, (4) failure to record, (5) transfer encompasses substantially all the transferor's property, (6) transferor retains possession of the transferred premises, (7) transfer completely depletes transferor's assets, and (8) relationship of the parties. *Enzler*, 537 P.2d at 522.

7. There was evidence that Wife spent her share of the proceeds on the parties' living expenses in California. The court found that Husband used marital funds to pay Wife.

8. We recognize that the transfer neither rendered Husband insolvent nor substantially depleted his assets. Furthermore, the deeds from Husband and Wife to Schnell and from Schnell to Charles were promptly recorded. The fact that not all the badges of fraud point to a finding of fraudulent intent does not mandate reversing the trial court.

### B. Did the Trial Court Err in Setting Aside the Conveyance of Husband's 50% Interest in the Anchorage Home?

Husband and Wife owned the property as tenants in common. The general rule is that a tenant in common has the right to voluntarily convey that interest; the transferee acquires an undivided interest equivalent to the transferor's. *Krug v. Krug*, 5 Kan.App.2d 426, 618 P.2d 323, 325 (1980); *Beckstrom v. Beckstrom*, 578 P.2d 520 (Utah 1978). Consent of co-tenants is not required. *Justus v. Clelland*, 133 Ariz. 381, 651 P.2d 1206, 1207 (Ariz.App.1982); *Cox v. Lasley*, 639 P.2d 1219, 1221 (Okla. 1982). Husband argues that he had the right to convey his 1/2 interest to Charles without Wife's consent; he therefore reasons that the trial court erred in setting aside the conveyance of his undivided 1/2 interest to Charles.

We reject Husband's argument because of the marital relationship between the co-tenants. When a spouse makes a "colorable" transfer of her separate property intending to defraud the other, the defrauded spouse may have the transfer set aside. *Scavello v. Scott*, 194 Colo. 64, 570 P.2d 1, 2 (1977); *Robinson v. Leonard*, 274 Or. 635, 547 P.2d 629, 631 (1976). A "colorable" transfer is one which is not absolute but rather allows the transferor to maintain control of the property. *Scavello*, 570 P.2d at 2. *See also Sanditen v. Sanditen*, 496 P.2d 365, 367–68 (Okla.1972). The burden of proof is on the defrauded spouse. *Alexander v. Alexander*, 538 P.2d 200, 204 (Okla.1975). Therefore this court has the power to set aside a spouse's alienation of his separate property when the transfer is (1) merely colorable, leaving the transferor with effective control of the property and (2) made with the intent to deprive the other spouse of her marital rights.[9] Since the trial court found that Husband intended to defraud Wife and the evidence showed his continued possession of the Anchorage home, the trial court's decision to set aside the entire conveyance was not clearly erroneous.

### C. Did Wife Receive a Double Recovery?

Although Judge Serdahely ordered the conveyance be set aside as fraudulent, he did not require Wife to return to Husband her share of the proceeds. Husband argues this is an abuse of discretion. Wife argues that forcing her to return the proceeds would be a meaningless act given the circumstances presented.

Judge Serdahely properly left the division of money and property to the trial court in the divorce action.[10] That court found that Husband used marital funds to purchase Wife's interest in the home and awarded Wife all marital property currently in her possession. Therefore, even if Wife still had all the proceeds, their disposition is provided for in the decree of divorce. Had Judge Serdahely ordered otherwise, there would be conflicting orders on appeal. We conclude that the trial court did not abuse its discretion in failing to order disgorgement as a condition of rescission.

### D. Is the Award of Attorney's Fees an Abuse of Discretion?

The trial court's order of July 18 requested that Wife's attorney submit an appropriate motion and affidavit as to fees within ten days of a decision. On August 24, Wife's attorney submitted an affidavit and proposed judgment for costs and attorney's fees. Final judgment issued on August 27. Although Wife's attorney failed to meet the deadline imposed in the July 18 order, the court awarded $4,000 attorney's fees. However, the court found Wife waived the cost award. Alaska R.Civ. P. 79(a).

We conclude that the trial court did not abuse its discretion in awarding attorney's fees on the late motion. *See State v. University of Alaska*, 624 P.2d 807, 817 (Alaska 1981).

**9.** Even *contingent* marital rights are protected. *Alexander*, 538 P.2d at 203–204.

**10.** Judge Serdahely found that Wife spent some of the proceeds on the parties' California living expenses. This fact tends to prove Wife did not receive a double recovery.

## THE DIVORCE CASE

A. Did the Trial Court Err in Refusing to Enforce the Postnuptial Agreement on the Basis of Fraud, Duress and Estoppel?

 Husband argues that the postnuptial agreement is enforceable and the trial court erred by invalidating it because of fraud, duress and estoppel. Wife contends the trial court's findings are supported by the evidence.

Paragraph 11 of the agreement provides that it shall be construed under California law. Postnuptial agreements are valid, subject to the rules governing confidential relationships. *Tompkins v. Bishop*, 94 Cal. App.2d 546, 211 P.2d 14 (1949); Cal.Civil Code § 5103 (West Supp.1985).[11] When one spouse fails to act in good faith and thereby gains an advantage over the other, he is guilty of fraud. *Norris v. Norris*, 50 Cal.App.2d 726, 123 P.2d 847, 851–52 (1942); Cal.Civil Code § 2234 (West 1984).[12] Furthermore, when one spouse gains an advantage over the other, the transaction is presumed to be the result of undue influence and without sufficient consideration, thus the advantaged spouse has the burden of proving the transaction was fair, just and reasonable. *Morris v. Berman,* 159 Cal.App.2d 770, 324 P.2d 601, 613 (1958); *Norris,* 123 P.2d at 851–52; Cal. Civil Code § 2235 (West 1984).[13] The advantaged spouse meets his burden of proof by showing full disclosure or arm's length bargaining. *Norris,* 123 P.2d at 851–52.

In the case at bar, the agreement was entered during an ongoing marriage. Husband had the burden of proving the agreement was fair, just and reasonable because of arm's length bargaining or full disclosure of marital assets.

The trial court found that Husband actively discouraged Wife from consulting with an attorney and repeatedly threatened divorce, therefore there was no arm's length bargaining. It further concluded that Husband did not (and has still never) fully disclosed his assets, therefore there was no full disclosure. These findings are supported by evidence in the record. We presume that the agreement is the result of undue influence and without adequate consideration. Therefore, we conclude that the trial court did not err in refusing to enforce the agreement.

B. Are the Trial Court's Property Division and Valuation Clearly Unjust?

 The trial court ordered Husband to dissolve the Gabaig Family Trust

---

11. Cal.Civil Code § 5103 provides:
§ 5103. Contracts with each other and third parties
(a) Subject to subdivision (b), either husband or wife may enter into any transaction with the other, or with any other person, respecting property, which either might if unmarried.
(b) Except as provided in Sections 143, 144, and 146 of the Probate Code, in transactions between themselves, a husband and wife are subject to the general rules which control the actions of persons occupying confidential relations with each other, as defined by Title 8 (commencing with Section 2215) of Part 4 of Division 3.
Cal.Code § 2228 provides:
§ 2228. Good faith
TRUSTEE'S OBLIGATION TO GOOD FAITH. In all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind.

12. Cal.Civil Code § 2234 provides:
§ 2234. Violations as fraud against beneficiary
TRUSTEE GUILTY OF FRAUD, WHEN. Every violation of the provisions of the preceding sections of this Article is a fraud against the beneficiary of a trust.

13. Cal.Civil Code § 2235 provides:
§ 2235. Transactions between trustee and beneficiary; presumption
All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence. The presumptions established by this section do not apply to the provisions of an agreement between a trustee and his beneficiary relating to the hiring or compensation of the trustee.

and awarded Wife a one-third interest in the value of all his real and personal property.[14] The property was to be valued by a professional trustee on the date of separation or divorce, whichever was higher. However, because Husband disobeyed the court's order to dissolve the trust, the property was valued at the highest figure supported by the testimony. Husband argues this is clearly unjust.

The equitable division of property is a three-step process: the court (1) determines what property is available for distribution, (2) values the property and (3) finds the most equitable allocation. *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983). We will reverse a property distribution only if the trial court abused its discretion; the appellant must show it is clearly unjust. *Hinchey v. Hinchey*, 625 P.2d 297, 304 (Alaska 1981), *rev'd on other grounds Dowling v. Dowling*, 679 P.2d 480 (Alaska 1984).

Property available for distribution includes all property acquired during marriage, whether title is joint or separate. AS 25.24.160(6).[15] The trial court's valuation will not be set aside unless it is clearly erroneous. *Courtney v. Courtney*, 542 P.2d 164, 168 (Alaska 1975). We have refused to set aside a valuation supported by expert testimony, even though it was contradicted by another expert. *Hunt v. Hunt*, 698 P.2d 1168, 1170–71 (Alaska 1985). The trial court does not abuse its

discretion when it values the property on a reasonable date. *Id.* at 1172; *Bussell v. Bussell*, 623 P.2d 1221, 1222–23 (Alaska 1981).

The trial court should presume an equal division of property is the most equitable, then apply the factors discussed in *Merrill v. Merrill*, 368 P.2d 546 (Alaska 1962).[16] The court need not make findings as to each *Merrill* factor, but its findings must provide an adequate basis for the conclusion reached. *Brooks v. Brooks*, 677 P.2d 1230, 1233 (Alaska 1984); *Merrill* 368 P.2d at 548 n. 10.

Applying this analysis to the case at bar, the trial court first specified property available for distribution; it was all acquired after the parties were married.[17] Much of the property consisted of trust assets formerly held separately by Husband, but AS 25.24.160(6) expressly allows division of property held separately.

The trial court valued the Anchorage home at $207,000; this is not disputed. Husband presented appraisals of his California assets. The trial court found that Wife was unable to submit her own appraisals because Husband actively resisted discovery attempts and refused to pay interim attorney's fees. The court accordingly concluded that it was impossible to value the California (trust) property in the decree and ordered the future trustee to procure an appraisal. However, when Husband did

14. The trial court stated that if it is finally determined that the Hillside residence was fraudulently conveyed and becomes part of the marital estate, then Wife is entitled to a one-third interest in Husband's property.

15. AS 25.24.160 provides in pertinent part:
 Sec. 25.24.160 Judgment. In a judgment in an action for divorce ... or at any time after judgment, the court may provide
 . . . .
 (6) for the division between the parties of their property, whether joint or separate, acquired only during coverture, in the manner as may be just, and without regard to which of the parties is in fault; ... and to accomplish this end the judgment may require that one or both of the parties assign, deliver, or convey any of their real or personal property to the other party....

16. The primary factors the court should consider are:
 [T]he respective ages of the parties; their earning ability; the duration and conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances, including the time and manner of acquisition of the property in question, its value at the time and its income producing capacity if any.
 *Merrill* 368 P.2d at 547 n. 4.

17. Husband does not argue that property inherited or received by gift during marriage should be treated as property not acquired during coverture under AS 25.24.160(6). Thus, we have no occasion to rule on this point.

not comply with the court's order to dissolve the trust, the trust property was valued at a total of $2,250,000, the highest value indicated in the testimony.

Notwithstanding its inability to value the trust property, the trial court made an equitable allocation, awarding Wife one-third the value of the marital assets. The court gave more than half the property to Husband primarily because he inherited it.[18]

Based on its evaluation of the *Merrill* factors, the trial court's property division is not clearly erroneous. Therefore, we affirm the property division and valuation.

C. Is the Trial Court's Alimony Award Clearly Unjust?

 The trial court awarded Wife $2,000 per month alimony. Husband contends this is clearly unjust because it exceeds his monthly income and because it is an obligation of his estate.

The trial court has the power to award alimony payments as are just and necessary, without regard to fault. AS 25.24.-160(3).[19]

We have expressed a preference of providing for spouses' financial needs by property division rather than alimony. *Malone v. Malone,* 587 P.2d 1167, 1168 (Alaska 1978). As in property divisions, the trial court must consider the *Merrill* factors in setting an alimony award.[20] An alimony award is just and necessary if there is not adequate property to provide for the parties' needs and one spouse is unable to support herself by gainful employment. *Messina v. Messina,* 583 P.2d 804 (Alaska 1978). We may find an abuse of discretion

when a property and maintenance award takes practically all one spouse's income. *Burrell v. Burrell,* 537 P.2d 1, 4 n. 6 (Alaska 1975). We have expressed concern when promissory note payments from one spouse to the other would leave the payor with no income. *Brooks* 677 P.2d at 1235.

We conclude that the property division in this case adequately provides for Wife's financial needs. Therefore, we reverse the alimony award in light of our preference of satisfying a spouse's financial needs with a property division, and direct that the Decree of Divorce be modified accordingly.[21]

THE ATTORNEY'S FEES AWARD

A. Did the Trial Court Abuse Its Discretion in Awarding Wife Two-thirds of Her Costs and Attorney's Fees?

During the trial, Wife was awarded interim fees of $15,000, which Husband never paid. *See supra* note 2. In the final decree, the court awarded Wife two-thirds of her costs and attorney's fees. Wife's total fees and costs were $25,815.82, the award is therefore $17,210.54. The $15,000 interim award had been reduced to judgment, therefore judgment was entered on the final award in the amount of $2,210.54.

Husband challenged the propriety of the interim award. He argued that the interim and final attorney's fees awards left Wife with a windfall. This issue is moot because the final judgment was reduced by the interim award. Wife did not receive a double recovery. In any event, we find the award is not unjust or unreasonable.

(3) for the recovery by one party from the other of an amount of money for maintenance, in gross or in installments, as may be just and necessary without regard to which of the parties is in fault....

**20.** The *Merrill* factors are set forth *supra* note 16.

**21.** Due to our reversal of the alimony award on the ground that the property division adequately satisfies Wife's financial needs, we do not address whether an alimony award can be made an obligation of Husband's estate.

**18.** All the other factors considered indicate a more equal division would be equitable: Husband's "psychological warfare" against Wife, Wife's psychological condition and inability to work, the 12–year duration of the marriage, Wife's income and needs, and the fact that Wife contributed most heavily to the parties living expenses during marriage.

**19.** AS 25.24.160 provides in pertinent part:

In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide
. . . .

The court considered the parties' relative worth and Husband's conduct during litigation. The trial court did not abuse its discretion. *See Rostel v. Rostel,* 622 P.2d 429, 432 (Alaska 1981).[22]

The decisions of the trial court are AFFIRMED as modified.

---

**22.** Husband never paid the interim attorney's fees award nor the interim nor final alimony awards. These awards were reduced to judgment and Wife requested an order to show cause why Husband should not be held in civil and criminal contempt for failure to comply with the orders of the court. The motion was granted. When Husband failed to appear at the order to show cause hearing, a bench warrant setting bail at $25,000 was issued. Husband appeals.

We do not address this issue since the issuance of a bench warrant is not a final judgment of contempt and therefore not an appealable order.