## HAZELTON *v.* MILLER.

---

SPECIFIC PERFORMANCE; EQUITY; ADEQUATE REMEDY AT LAW.

1. While where a contract, specific performance of which is sought, is for the conveyance of land, it will generally be assumed that the remedy at law is inadequate, yet where that inference is negatived by the express averments of the bill seeking specific performance, a court of equity has no jurisdiction.

2. A bill in equity for the specific performance of a contract for the sale of land at a given price is properly dismissed on the ground that the complainant has an adequate remedy at law, where it alleges that the complainant has entered into a binding contract to convey the

land for a specified price, and seeks a conveyance from the defendant, whose solvency is not denied, for the sole purpose of performing that contract.

No. 1492.   Submitted March 21, 1905.   Decided April 4, 1905.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia sustaining a demurrer to and dismissing a bill for the specific performance of a contract for the sale of land.                    *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a decree dismissing a bill for specific performance, upon a demurrer thereto.

The contract of which performance is sought to be compelled reads as follows:

"For the sum of $1 and other valuable considerations, I hereby agree and bind myself and my heirs to sell to George C. Hazelton, and to deliver by good and sufficient deed at any time during the present session of Congress, and such additional time as may be necessary for settlement under appropriation by that Congress, part of lot numbered two (2), in square numbered one hundred and forty-three (143), being six thousand, seven hundred and twenty (6,720) feet, more or less, and all the ground owned by me in said square with the improvements thereon, for the sum of nine thousand dollars ($9,000).

"Should the said George C. Hazelton fail to take advantage of and accept this offer as above within the time mentioned, then this agreement shall be null and void.

"Witness my hand this 11th day of December, A. D. 1902.

"(Signed)                                Francis Miller."

Having set out the contract, the bill proceeds as follows:

"4. A part of the consideration mentioned in said contract moving to the plaintiff from the defendant was services rendered both before and after the making of said contract, by the plaintiff, in bringing the said property to the attention of the

committees of Congress as a suitable and appropriate site for a
hall of records. Plaintiff, at the instance of the said defendant,
who desired to sell said property at a reasonable price, had ex-
pended much time and labor, and expended considerable money,
prior to the making of that contract, and has also subsequent
thereto, in calling the attention of the committees of Congress to
the eligibility and desirability of the land in said square for the
purpose aforesaid, and during the last two sessions of Congress
plaintiff devoted a great deal of his time to the ascertainment
of the condition of the title, the condition of the land as afford-
ing a good foundation, the condition, size, and durability of the
sewers in the streets surrounding said square, the kind, char-
acter, and condition of the buildings thereon, and other facts
tending to show that the said square was a desirable location for
said building, and furnishing them to and laying them before
the said committees of Congress in order to enable them to act
intelligently upon the matter. At the first session of the 57th
Congress, plaintiff called the attention of the committees of
Congress to said location and, at the request of the members of
said committees, he ascertained and collated various facts in
relation thereto, and subsequently during said session, at
the like request of said committees, prepared a bill to
be introduced in Congress authorizing the purchase of said
square for said purpose, but the bill did not pass at that ses-
sion. Subsequently at the second session of said Congress, he
again called the attention of the committees to the said real
estate, and at their like request collected and furnished them
other important information in relation to it, and employed
others to aid and assist him in securing such information to
demonstrate to said committees the propriety of said purchase.
He also, at his own expense, caused many of said facts to be put
in print and furnished them to the members of said committees
for their information and for the use of other members of Con-
gress when said bill should come up for debate. At several
sessions of Congress he appeared before said committees and
filed briefs and made arguments, the object and tendency of
which were to show that, upon all of the facts presented in re-

lation to this and other sites ·mentioned and discussed, the square above mentioned was better adapted to the purpose of a hall of records than any other in the city. Said committees all the time understood that he was the owner of some of said property and was acting as attorney for other owners of the said real estate. At the second session of said Congress, said bill was passed, authorizing the purchase or condemnation of said square for the purpose aforesaid, and appropriating the sum of four hundred thousand dollars ($400,000), or so much thereof as might be necessary to pay for the same. Said act provided that if the Secretary of the Treasury could by negotiation acquire said square or any part thereof at such figures as might be deemed reasonable, that he might purchase instead of condemning. After the passage of said bill, with the knowledge and acquiescence of the said Miller, the plaintiff commenced negotiations with the proper officers of the Treasury Department to make a sale of said property to the United States, and on the — day of Aug. 1903, agreed with said officers upon a price which they were willing to pay for said property, rather than to condemn it, which aggregated about fourteen thousand three hundred and ninety-five dollars and fifty cents ($14,395.50), and informed the defendant that such contract had been consummated, but that it would take some time for the Treasury Department to investigate the title and make arrangements for the payment of the money; and the proper Treasury officers are now engaged in such work; and the time has not yet arrived when they can properly, under said act of Congress, pay out the money for the real estate hereinbefore mentioned; and the necessary time for settlement under said appropriation has not yet expired.

"5. The plaintiff further shows that after he had informed the defendant had knowledge of the sale which he had made to the United States of said property, the defendant intimated to the plaintiff that he did not intend to keep his contract with him, but to convey the property direct to the United States, and demand the right to receive from the United States the full sum of money which the government has agreed to pay for said lot of

land, and denies the right of the plaintiff to the purchase money for which said property has sold in excess of the nine thousand dollars ($9,000)."

It is further alleged that on October 5, 1903, complainant tendered to defendant the said sum of $9,000, and demanded the execution by him and his wife of a conveyance of the title. Among other prayers is one for an injunction restraining the defendant from conveying the property to the United States and receiving any money therefor.

*Mr. C. C. Cole* and *Mr. R. Golden Donaldson* for the appellant, who also appeared in proper person.

*Mr. J. J. Darlington* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The demurrer raises several questions, only one of which we find it necessary to consider.

The bill was rightly dismissed if for no other reason than a want of jurisdiction in equity.

The essential foundation of the jurisdiction to entertain a bill for the specific performance of a contract is the inadequacy of the remedy at law for its breach. Ordinarily, where the contract is for the conveyance of land, it is assumed that the remedy at law is inadequate and incomplete. But in this case that inference is negatived by the express allegations of the bill. The complainant alleges that he has entered into a binding contract to convey the property to the United States for the agreed sum of $14,395.50, and seeks a conveyance from the defendant, whose solvency is not even denied, for the sole purpose of performing that contract.

Having no other purpose, and having fixed and rendered certain the damages sustained by the breach of the contract, his

sole remedy is at law. Further discussion, and the citation of authorities in support of this conclusion, are unnecessary.

The decree must be affirmed, with costs; and it is so ordered.

*Affirmed.*

An appeal to the Supreme Court of the United States was allowed April 6, 1905.