651 P.2d 1206

**Lane D. JUSTUS, Plaintiff/Appellee,**

v.

**Glenn E. CLELLAND and Barbara L. Clelland, husband and wife, Defendants/Appellants.**

**No. 2 CA–CIV 4195.**

Court of Appeals of Arizona, Division 2.

April 9, 1982.

Rehearing Denied May 20, 1982.

Review Denied Sept. 22, 1982.

Hecker & Phillips by Thomas M. Pace, Tucson, for plaintiff/appellee.

Jack J. Rappeport, Tucson, for defendants/appellants.

HOWARD, Chief Judge.

The action below was for specific performance of a land contract and for damages. The case was tried to an advisory jury which answered specific interrogatories submitted to it. The trial court awarded appellee specific performance and damages.

Appellants contend that specific performance was not available to appellee because (1) a co-tenant cannot sell his undivided share of the common property without the consent of the other co-tenants; (2) the land was purchased for speculative purposes; (3) there was a material mistake; (4) the sale would be oppressive and unconscionable to the non-consenting co-tenants and (5) all the elements of the contract were not proved by clear and convincing evidence. We affirm.

We consider the facts in the light most favorable to appellee. *Vivian Arnold Realty Co. v. McCormick,* 19 Ariz.App. 289, 506 P.2d 1074 (1973). Appellants owned an undivided one-half interest in approximately 47 acres of unimproved land located in Pima County. The other undivided one-half interest was owned by appellant Glenn Clelland's brother, Russell, and his widowed mother, Emma. Glenn wanted to offer the land for sale and Emma agreed to sell if the price was $200,000. Glenn gave Kelly Realty (Kelly) an exclusive listing for $200,000. Kelly did not require Emma to sign the listing agreement because of her age, health, and the family relationship involved.

Appellee, a real estate salesman, learned of the listing and offered to purchase the property for $150,000. The offer was relayed to Glenn who made a written counteroffer for $160,000. Appellee accepted the counteroffer, and was thereafter told for the first time by Kelly, that Emma and Russell were also co-owners but there would be no problem in getting their signatures. When Emma and Russell refused to sign the counteroffer, Lane insisted that appellants still sell him their undivided one-half interest. When they refused, this lawsuit ensued.

## CO–TENANT'S RIGHT TO SELL

■ Contrary to appellants' assertion, the law in Arizona is clear that the estate of a co-tenant is separate in character and may be alienated without the consent of the other co-tenants. *Haynie v. Taylor,* 69 Ariz. 339, 213 P.2d 684 (1950); see also, 86 C.J.S., Tenancy In Common § 120 (1954).

## EFFECT OF BUYER'S INTENT TO RESELL

■ Some courts have denied specific performance in cases where the purchaser does not personally want the land but only intends to resell it, since in such a case, damages would be theoretically adequate and there would be no need for the intervention of equity. See *Hazelton v. Miller,* 25 App.D.C. 337 (1905). There was no evidence in this case that Mr. Lane had purchased the property only for the purpose of reselling it to others. However, even if there were such evidence, we would not follow such a rule. As is pointed out in Dobbs, Handbook on the Law of Remedies, § 12.10 at 848, most courts would not agree with this approach and it is probably subject to the criticism that it takes the adequacy argument too seriously. As stated by Dobbs, "It would certainly not be desirable to investigate the purchaser's intended use of the property in every case, nor to refuse specific performance to persons who were in the business of buying and selling land." The court in *Loveless v. Diehl,* 235 Ark. 805, 364 S.W.2d 317 (1963), held that to

refuse specific performance because the purchaser had contracted for resale would diminish the transferability of property and that what the purchaser did with the property was of no concern to the vendor. See also *McCullough v. Newton*, 348 S.W.2d 138 (Mo.1961); and *Radiant Realty Co. v. Sheinbaum*, 9 Misc.2d 1009, 171 N.Y.S.2d 252 (1958).

### MISTAKE OF LAW

Appellants testified that they thought the signatures of the other co-tenants were required before the counteroffer was valid and therefore the trial court erred in decreeing specific performance in the face of this mistake. We do not agree. The mistake was a unilateral mistake of law. Equity will not correct a mistake of law as to the legal effects of an agreement unconnected with a mistake of fact, or fraud, or imposition, or undue advantage. *Steinfeld v. Zeckendorf*, 10 Ariz. 221, 86 Pac. 7 (1906), rev'd 11 Ariz. 192, 89 Pac. 496 (1907). A mistake of fact is defined as a mistake not caused by the neglect of any legal duty on the part of the person making the mistake, but consisting in his ignorance of some fact, past or present, material to the transaction, or in his belief in the existence of some fact, material to the transaction, which does not exist. *Steinfeld v. Zeckendorf*, supra. Appellant's mistaken belief that they could get the other co-tenants to sign the counteroffer is not a mistake of fact. Future expectancies are not facts. Dobbs, Handbook on the Law of Remedies, § 11.2 at 718 and see also *Vorchetto v. Sappenfield*, 223 Mo.App. 460, 14 S.W.2d 685 (1929). Since there was not a mistake of fact, and there was no fraud, imposition, or undue advantage, the trial court did not abuse its discretion in granting specific performance.

### SPECIFIC PERFORMANCE AND STANDARD OF PROOF

The agreement signed by the parties gave appellee five days from the date of the delivery of the title report to him to approve it and deliver written approval to appellants. If appellee did not approve the title report within a specified time or did not deliver it to appellants within the said time, the agreement became null and void. At the trial the jury was asked to specifically find whether appellee delivered his acceptance within the five-day period. They found, by a preponderance of the evidence, that he did.

In order that specific performance of a contract may be decreed, the evidence of the making of the contract and its terms must be clear and convincing. *Borden v. Case*, 270 Ala. 293, 118 So.2d 751 (1960); 71 Am.Jur.2d Specific Performance § 208. Appellants contend that specific performance should not be decreed since the jury made its finding by a preponderance of the evidence instead of clear and convincing evidence. We do not agree. The issue submitted to the jury concerned neither the making of the contract nor its terms. A preponderance of the evidence sufficed.

### OPPRESSIVE OR UNCONSCIONABLE CONSEQUENCES

Specific performance will not be granted if, under the circumstances of the case, the results will be harsh, inequitable or oppressive. *Suchan v. Rutherford*, 90 Idaho 288, 410 P.2d 434 (1966); 71 Am. Jur.2d Specific Performance § 72. Appellants did not show that they would be thusly affected by the decree. However, the court may also withhold specific performance when it appears that the decree would operate oppressively or unjustly to innocent third persons. *Owens v. McNally*, 113 Cal. 444, 45 Pac. 710 (1896); 71 Am.Jur.2d Specific Performance § 76. We cannot see how the decree would be harsh or oppressive to the non-consenting co-tenants. The land here was unimproved realty and the co-tenants should have known their method of ownership gave any of them a right to sell his or her undivided interest at any time without the consent of the others.

Affirmed.

HATHAWAY and BIRDSALL, JJ., concur.