147 Ariz. 1 (1985)
708 P.2d 92
FUND MANAGER, PUBLIC SAFETY PERSONNEL RETIREMENT SYSTEM, Plaintiff/Appellant,
v.
TUCSON POLICE AND FIRE PUBLIC SAFETY PERSONNEL RETIREMENT SYSTEMS BOARD; Retirement System Disability Board of Appeals; and Kurtis A. Jackson, Defendants/Appellees.
No. 2 CA-CIV 5228.
Court of Appeals of Arizona, Division 2, Department A.
April 15, 1985.
Review Denied October 16, 1985.
*2 Snell & Wilmer by Michael P. Anthony and Tibor Nagy, Jr., Phoenix, for plaintiff/appellant.
Lingeman & Bock by Larry J. Lingeman, Tucson, for defendants/appellees.
OPINION
BIRDSALL, Presiding Judge.
This case is before us for a second time. In Fund Manager, Public Safety Personnel Retirement System v. Tucson Police Public Safety Personnel Retirement System Board, 137 Ariz. 536, 672 P.2d 201 (1983), we vacated and set aside a summary judgment in favor of the board. We remanded the case for further proceedings consistent with our opinion. We will not detail the facts set forth in Fund Manager I, but we will discuss only such additional facts necessary to our resolution of this second appeal.
After our mandate issued, the trial court presided over an evidentiary hearing on the fund manager's appeal from the local police board decision that Kurtis A. Jackson was to be paid permanent disability benefits retroactive to July 1, 1980. It was, and is, the position of the fund manager that when Jackson withdrew his contributions from the system he ceased to be a member and therefore could not pursue a motion for rehearing from the July 1, 1980, decision of the local board.
The fund manager's position is fortified by the application for withdrawal which Jackson and his then-attorney signed on July 1, 1980. New counsel represented him at trial and on appeal. The relevant text of the document was as follows:
"I certify that I have terminated my employment and have not previously received refund of my contributions to the System. I hereby make application for the refund of my contributions to the Arizona Public Safety Personnel Retirement System. I understand that if I have at least ten years of membership that I may elect a deferred retirement benefit and that withdrawal of my contributions forfeits any rights to benefits from the System. Under the law if you do not withdraw your contributions and you obtain employment with an employer in the System within 120 days after termination, your service credits can be carried over to your new employer without loss of credits A.R.S. 38-853. Consequently, if you are contemplating a change of employment within the System, it may be advantageous to defer a withdrawal until you determine your future employment within the 120-day period. If you withdraw your contributions your service credits will be cancelled. These service credits can be reinstated only if you are reemployed by your last employer within two years, and redeposit your contributions with interest to date of redeposit, with written election to be made within sixty days of reemployment A.R.S. 38-849."
Clearly, by the execution of this document and the acceptance of the refund of his contributions which followed, Jackson gave up any right to benefits from the system.
However, the trial court found that Jackson was told by two members of the local board that he could withdraw his contributions without losing his right to appeal. The evidence supporting this finding shows it occurred in a conversation following the hearing on July 1, 1980. The formal hearing had adjourned and the conversation was just prior to Jackson's making the written application for the refund. Beside Jackson and the two board members, Jackson's attorney was present. The attorney was also with Jackson when the refund application form was completed and witnessed his signature on the document.
*3 The trial court then by minute entry arrived at certain conclusions of law and made the following order:
"CONCLUSIONS OF LAW:
1. The Court concludes that on July 1, 1980, when petitioner Jackson withdrew his contributions from the system that under the state of the law as it existed at that time he had a right to appeal the decision of the Tucson Police and Fire Public Safety Personnel Retirement System Board made on July 1, 1980. The record shows that the petitioner appealed this decision to the disability board and that the disability board, while not having the capability of declaring his eligibility one way or the other in the system, did reverse the finding of the local board as to the question of whether or not he was suffering from a disability.
2. The Court concludes then as a matter of law that the Tucson Police and Fire Public Safety Personnel Retirement System Board has the power under A.R.S. 38-847(d)(1)(3) to make a determination as to the right of any claimant to a benefit and to afford any claimant of the fund manager or board a right to rehearing on the original determination. The board has a right under A.R.S. 38-847(d)(1) to decide all questions of eligibility and service credits, and determine the amount, manner, and time of payment of any benefits under the system.
The Court notes that on July 1, 1980, A.R.S. 38-846.01 was silent as to what effect withdrawal of contributions would have on a participant's eligibility in the system. The Court also notes that in 1983 the law was amended by A.R.S. 38-846.02 to provide that withdrawal of contributions would result in a forfeiture of all rights to benefits under the system and forfeiture of the rights to rehearing and appeal except as provided in A.R.S. 38-849.
The Court feels that in accordance with the provisions of A.R.S. 38-847(d)(1)(3) that the Tucson Police and Fire Safety Personnel Retirement System Board has at all time acted within their lawful authority, and the Court could find no evidence that this board acted capriciously or arbitrarily. The Court feels that the board has the right to take into consideration the factual circumstances of this case wherein it is obvious that the petitioner was operating at the very least under a mistaken belief that he could withdraw his contributions, and the board has the authority to relieve him of that mistake on the basis of equitable considerations.
The Court feels that on July 1, 1980, the petitioner Jackson had a right to appeal, which was given to him by the law, and if his appeal rights were in any way affected by a mistake, that the local board had the power to correct that inequity as the case can even be decided on the basis of a mistake.
THE COURT ORDERS:
1. That the petitioner Jackson return to the fund all moneys that he has withdrawn as his contributions together with an amount that will equal the interest that this money would have earned the fund from the date that he withdrew it.
2. Affirming all actions of the board in awarding a disability retirement pension to the petitioner Jackson."
These conclusions and this relief were subsequently contained in the judgment from which this appeal is taken.
We do not agree that the local board could, on the basis of equitable considerations or otherwise, relieve Jackson from the clear provisions of the application for refund or the legal consequences of the withdrawal of his contributions. Nor could the trial court. No authority for this result has been cited to us, and we have found none.
Although the trial court made no such finding of fact, the conclusions of law contain a finding that the petitioner was operating under the mistaken belief that he could withdraw his contributions, presumably still pursue his action for benefits, and, if he prevailed, somehow restore his status as a member of the system and be eligible for those benefits. Whether he *4 had such a belief is a question of fact. The only evidence to support such a finding was his own conclusory testimony that there was an agreement he could do that and inferences which can be drawn from the testimony of his attorney and the conduct of each. We seriously question the sufficiency of this evidence to support such a finding. It is not reasonable that Jackson would believe that an informal discussion with two of five members of the local board would be sufficient to permit him to withdraw his benefits and still remain a member of the system for the purpose of pursuing an appeal from an adverse decision. We question it even more because he was represented by counsel at that very time. Nevertheless, assuming, arguendo, that this is sufficient to support such a finding, the mistake is one of law and not of fact.
The mistake, if any, was that he and his attorney believed there was an enforceable agreement permitting this procedure because of the conversation with the two board members. Jackson was the only mistaken party. Nothing suggests that the two board members believed that they were promising him that the board would permit him to withdraw his benefits while still remaining a member. They were only expressing their lay opinions that this could be done. Moreover, the two members could not bind the board to such an agreement. Nor does any evidence show that they thought they could. The trial court found only that "two members of the board told petitioner Jackson that he could withdraw his contributions to the retirement system without losing his right to appeal."
As long ago as 1906, our supreme court said that "a mistake of law, as to the legal effect of an agreement, which is unconnected with a mistake of fact, and where there is no fraud, imposition, or undue advantage, will not be corrected by a court of equity." Steinfeld v. Zeckendorf, 10 Ariz. 221 at 231, 86 P. 7 (1906), aff'd on rehearing, 11 Ariz. 192, 89 P. 496 (1907), aff'd in part and rev'd in part, 225 U.S. 445, 32 S.Ct. 728, 56 L.Ed. 1156 (1911). This court cited and followed Steinfeld on this rule of law as recently as Justus v. Clelland, 133 Ariz. 381 at 383, 651 P.2d 1206 at 1208 (App. 1982). The appellees do not contend that the mistake was one of fact, or that any fraud, imposition, or undue advantage existed. Nor did the trial court make any findings or conclusions of any fraud, imposition, or undue advantage. Although the trial court alluded to Jackson's "mistake," it did not label the mistake as one of law or fact. If the trial court was of the belief that it was a mistake of fact, that belief was wrong.
"A mistake of fact is defined as a mistake not caused by the neglect of any legal duty on the part of the person making the mistake, but consisting in his ignorance of some fact, past or present, material to the transaction, or in his belief in the existence of some fact, material to the transaction, which does not exist." Justus, supra, 133 Ariz. at 383, 651 P.2d at 1208, citing Steinfeld, supra.
"A mistake of law is an erroneous conclusion as to the legal effect of known facts." Steinfeld, supra, 10 Ariz. at 231, 86 P. at 11. Nothing suggests that Jackson was ignorant of any fact or believed in the existence of any fact which did not exist. His mistake was caused by neglect of legal duty. He believed either that he had an enforceable agreement because of the opinions expressed by the two board members, or that he could withdraw his contributions and still receive benefits despite the contrary language in the documents he signed. The trial court erred when it concluded that the local board could relieve Jackson of his mistake on the basis of equitable considerations. Neither the board nor the court can, by the use of equity, relieve Jackson from the legal consequences of the document he signed.
In an effort to affirm the trial court, we have conducted further research but to no avail. In D. Dobbs, Law of Remedies (1973), we have examined the text and authorities cited in Chapter 11, "Mistake." Neither the author nor the authorities support giving any remedy for the type of *5 mistake which confronts us in this case. We have particularly considered § 11.8, "Mistake of Law," in which Professor Dobbs, while recognizing the general rule, criticizes it and discusses several exceptions and qualifications. We are unable to bring the instant case within any of those exceptions or qualifications. To do so would engraft a new, broad exception to the effect that whenever a party relies upon a lay person's mistaken opinion of his legal rights and acts thereon, equity will grant him relief. Under our facts, such a principle would be even more absurd because Jackson was represented by his attorney, and even more so because the document which he signed was diametrically opposed to what he had been told.
We have assumed in the foregoing analysis that at the time of the incidents giving rise to this appeal, a member of the Public Safety Personnel Retirement System could not legally withdraw his contributions and remain eligible for disability benefits. We believe this conclusion is a correct statement of the law as it then existed and most certainly as it is now written. Before its amendment in 1983, presumably occasioned by this case, the statute, A.R.S. §§ 38-841 to 857, did not speak directly to what effect withdrawal of contributions would have on a member's eligibility under the system, even though common sense tells us when someone takes his money out, he has effectively withdrawn from the system. It did provide that,
"[u]pon termination of employment for any reason other than death or retirement, a member shall receive a lump sum payment equal to his accumulated contribution as of the date of termination." A.R.S. § 38-846(A).
The form application signed by Jackson was developed for the purpose of accomplishing such withdrawal. The uncontroverted testimony at trial from both Mr. Lowell Sutton, the fund administrator, and the attorney for the local board was that the same form, in substantial part, had been used for that purpose since 1968. We find it significant that although the statute did not state directly that withdrawal of contributions forfeited any right to benefits, it did contain two provisions strongly indicative of that legislative intent. Both of these are referenced in the form signed by Jackson. A.R.S. § 38-853 provided that a member who had terminated employment could, if he obtained new employment within the system within 120 days, have his credits transferred, provided he left his accumulated contributions on deposit with the fund. And A.R.S. § 38-849(D) provided:
"If a member who received a severance benefit upon termination of employment, as provided in subsection A of § 38-846, is subsequently reemployed by an employer, his prior service credits shall be cancelled and service shall be credited only from the date his most recent reemployment period commenced. Notwithstanding the foregoing, if such former member's reemployment occurred within two years after his termination date, and, within sixty days after reemployment he signs a written election consenting to a timely reimbursement to the fund, he shall be required to redeposit the amount of his accumulated contributions at the time of his separation from service, with interest thereon to date of redeposit. Upon satisfaction of this obligation the member's prior service credits shall be reinstated."
In 1983 the legislature added the following as A.R.S. § 38-846.02:
"Upon termination of employment for any reason other than death or retirement, a member shall within twenty days after filing an application with the fund manager receive a lump sum payment equal to his accumulated contributions as of the date of termination less any benefit payments he may have received or any amount he may owe to the system. A member who withdraws his accumulated contributions from the system forfeits all rights to benefits under the system and his rights to rehearing and appeal, .. ."
*6 This subsequent legislation clarifying the statutory scheme, although not necessarily controlling, is strongly indicative of the legislature's original intent. Police Pension Board of City of Phoenix v. Warren, 97 Ariz. 180, 398 P.2d 892 (1965). "An amendment which, in effect, construes and clarifies a prior statute will be accepted as the legislative declaration of the original act." City of Mesa v. Killingsworth, 96 Ariz. 290 at 297, 394 P.2d 410 at 414 (1964). See also State v. Barnard, 126 Ariz. 110, 612 P.2d 1073 (App. 1980). Consistent, uninterrupted administrative interpretation of legislation, although not binding on the court, will, if not manifestly erroneous, be accepted and followed. Long v. Dick, 87 Ariz. 25, 347 P.2d 581 (1959). All of these long-recognized and often-repeated guides to statutory intent compel us to find that in 1980, when Jackson withdrew his contributions, he was no longer a member entitled to future benefits.
Other arguments advanced by the appellees are without merit. We address only two of them. They contend that because A.R.S. § 38-847(D), as it appeared in 1980, provided, in material part, that the local board had the power:
"1. To decide all questions of eligibility and service credits, and determine the amount, manner and time of payment of any benefits under the system.
* * * * * *
3. To make a determination as to the right of any person to a benefit ..."
that the decision of the board was within such power.
This argument overlooks subpar. E of the same section, which limited those powers:
"A board shall have no power to add to, subtract from or modify any of the terms of the system, nor to change or add to any benefits provided by the system, nor to waive or fail to apply any requirement of eligibility for benefits under the system."
Thus the board had no power to find a person who had withdrawn his contributions could still be a member entitled to benefits. The argument also fails to consider that the statutory scheme makes the fund manager responsible for the investments in the system. A.R.S. § 38-848, subpar. B, provides, "The fund is subject to the sole management of the fund manager ..." (emphasis added).
The appellee's contention that Jackson was not paid the full amount to which he was entitled by reason of his contributions is not properly before us. It was not an issue below. Jackson at one time filed an appeal concerning the amount of his payment and then dismissed it. He has not exhausted his administrative remedies on such a claim.
We reverse and remand with direction to enter judgment in favor of the appellant. Each party shall bear their own attorney's fees.
HOWARD and FERNANDEZ, JJ., concur.