784 P.2d 717

J.D. DICKENS, Margaret E. Dickens, Gayla Kay Graves and Richard M. Dickens, dba the J.D. Dickens Company, an Arizona partnership; and the J.D. Dickens Company, an Arizona partnership as trustee, Plaintiffs/Appellees,

v.

FIRST AMERICAN TITLE INSURANCE COMPANY OF ARIZONA, an Arizona corporation; Action Home Loans, Inc., an Arizona corporation; Raymond E. Bailey, Trustee; Harry I. Sparrow; Edith H. Sparrow; CWA, Inc. Pension Trust; Cooper–Weidler Acceptance, Inc.; Linda K. Scopes; Edna S. Scopes; Murrey Shamis; Frank Schuckardt; Gertrude Schuckardt; Anton Roos; Vinetta Roos; Jacob Kerstens; Mary Jane Kerstens; Seymour Greenberg; Sarah Greenberg; George W. Dyckman and Delores C. Dyckman, Defendants/Appellants.

No. 2 CA–CV 89–0123.

Court of Appeals of Arizona, Division 2, Department B.

Dec. 14, 1989.

Streich, Lang, Weeks & Cardon by Robert E. Miles, Marcia Horn Yavitz and E. Jeffrey Walsh, Phoenix, for plaintiffs/appellees.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Donald N. McIntyre, Andrew L. Pringle and Michael R. Golder, Phoenix, for defendants/appellants.

## OPINION

FERNANDEZ, Chief Judge.

At issue in this appeal is the trial court's rulings that appellees' deed of trust has priority over appellants' deed of trust, that appellees are entitled to restitution of payments made on appellants' note to prevent foreclosure of appellants' deed of trust, and that appellees are entitled to an award of attorney's fees. We affirm the rulings on lien priority and restitution. The attorney's fee award is partially affirmed and partially reversed.

Appellees J.D. Dickens, his wife and two children, and the partnership they formed for estate planning purposes (hereafter Dickens), entered into an agreement on June 8, 1984 to sell a parcel of real property to Mark Masias and Domenico Spano. The agreement provided that the buyers would pay $80,000 in cash as a down payment and Dickens would carry back a $298,000 note secured by a deed of trust on the property. It also provided that Dickens would subordinate that deed of trust pursuant to a subordination agreement and letter of intent as to amount and use to be drawn up by the buyers' attorney and approved by Dickens.

Escrow was opened at Ticor Title Insurance Company, and on July 19, 1984, Dickens executed a warranty deed, a "Subordination Agreement and Intent," and a shorter subordination agreement that contained a number of blanks. The subordination

agreement and intent reads in part as follows:

1. *Subordination.* SELLER agrees to subordinate the priority of such mortgage or cause to be subordinated such deed of trust as SELLER shall hold as mortgage [sic] or beneficiary on the subject property subsequent to the close of escrow of the aforementioned purchase and sale agreement to financing, as BUYER, or its successors may arrange on the subject premises. It is agreed that SELLER's obligation to subordinate the priority of his mortgage or deed of trust to only construction and development loan, for the new proposed BUYER's office building, limited to One Hundred Fifty Thousand Dollars ($150,000.00).

The shorter subordination agreement merely waives the priority of Dickens's lien and makes no mention of the use to be made of the borrowed funds. J.D. Dickens testified that the buyers had informed him they planned to build an office building on the property and needed to borrow $150,000 in order to build it. He testified that he agreed to subordinate his lien for that purpose because it would enhance the value of the property in the event of a foreclosure. He also testified that he signed both subordination agreements on the same date and was told the shorter one was the one that would be recorded and that the blanks would be filled in after the buyers obtained a lender.

Spano and Masias meanwhile had obtained a $150,000 loan from Action Home Loans, Inc. The loan was a two-year interest-only loan with interest of 20% per annum. The buyers paid 10 points or $15,000 to obtain the loan. They also had three months of payments impounded totaling $7,500. There were no restrictions on the use of the money. A loan officer from Action testified that Action did not make construction loans. The loan was closed through First American Title Insurance Company. Action Home Loans sent an instruction letter to First American indicating that it could disburse the funds only if Action's lien was in first position. First American's escrow officer testified that she received a copy of the subordination agreement and intent, that she did not have a copy of the shorter subordination agreement, that she notified the loan processor at Action Home Loans that there was a subordination agreement, that she did not read it to the loan processor or send her a copy of it, and that she did not read it completely herself. The escrow officer testified that she sent a letter to the escrow officer at Ticor enclosing Action's deed of trust and $73,847.50 of the loan funds to be used toward the down payment and authorizing her to release the funds only after the deed of trust was recorded. There is no mention in the letter of Action's requirement that its trust deed be in first position. First American's escrow officer testified that she told Ticor's escrow officer of that requirement over the telephone.

Escrow on both the loan and the sale of the property closed on July 26, 1984. Ticor recorded all the documents, providing a courtesy recording for First American's documents. Ticor had the deed recorded first, then Dickens's deed of trust, Action's deed of trust and, finally, the short subordination agreement that still contained several blanks. After the documents were recorded, First American gave the balance of the loan funds, $50,005.54, to Masias and Spano.

Several days after the documents were recorded, a title officer at First American determined there were problems with the blanks in the subordination agreement as well as with the fact that Dickens's partnership authority was not reflected in his signature or in the acknowledgment. At a vice president's direction, the First American escrow officer sent to Dickens a different subordination agreement with those defects corrected with a request that he execute it. The agreement stated that subordination was permitted for purposes other than improvement of the property, and Dickens did not sign the document. He testified that it did not reflect the parties' agreement.

Masias and Spano never made any payments on the Action loan and never began any construction. In January 1985, Action

initiated foreclosure proceedings on its deed of trust. When Dickens received notice of the impending trustee's sale, he paid to bring the note current. He later made three monthly payments on the note. The total he paid was $20,841.75. In April 1985, Dickens initiated foreclosure proceedings on his own deed of trust, alleging that Masias and Spano had breached their agreement by failing to keep the "senior lien current...." Dickens purchased the property at the trustee's sale in April 1986.

In July 1985, Dickens filed suit against Ticor, Action, and the various beneficiaries to whom Action had assigned interests in the deed of trust. Dickens later settled with Ticor under its title insurance policy, and Ticor's attorneys assumed management of the case. Meanwhile, First American had paid Action and the beneficiaries on its title insurance policy. Just before trial began, an amended complaint was filed, naming First American as a defendant and removing Ticor as a party. The first cause of action is for declaratory judgment as to the priority of the two liens. The second is for restitution of the payments Dickens made on Action's loan.

The case was tried to the court sitting with an advisory jury which answered a number of interrogatories. The trial court entered judgment for Dickens, finding that his lien was superior to Action's and awarding him restitution and attorney's fees.

## SUPERIORITY OF DICKENS'S LIEN

First American argues on appeal that the trial court erred in finding that Dickens's lien was superior to Action's, contending that Dickens was bound by Ticor's agreement to subordinate his lien, that Dickens agreed to subordinate by signing the shorter agreement, and that Action was a bona fide encumbrancer entitled to first position.

### Ticor's Agreement to Subordinate

First American argues that Ticor agreed to subordinate Dickens's lien when its escrow officer discussed with First American's escrow officer Action's requirement that its lien be in first position and Ticor proceeded to record the documents and disburse the loan funds in accordance with that agreement. Ticor's officer testified that she did not remember any details of the telephone conversation. There is no question that the recorded subordination agreement refers to Action's note and deed of trust.

Those facts, however, do not result in the conclusion that Dickens is bound by Ticor's actions. The trial court found that the subordination agreement and intent and the recorded shorter subordination agreement were intended to be read together. The evidence supports that finding. In fact, the subordination agreement and intent contemplated the execution of the shorter agreement. It provides as follows:

> 2. *Additional Documents.* SELLER agrees to execute and deliver to BUYER or such other individual or entity as BUYER shall direct such additional documents and agreements as may be required to effect the subordination of SELLER's mortgage or deed of trust priority as required above.

Dickens testified that his intention in agreeing to subordinate never changed and that he had agreed to subordinate if a new building were constructed because that would enhance the value of the property.

The manager of First American's home office escrow department testified that most of the roughly 2000 escrows she had handled that involved subordination agreements had restrictions on the permitted use of the loan money. She also testified that those uses may not appear in the recorded agreement but may be contained in a side document that is not recorded. First American argues nevertheless that Ticor's escrow officer had either actual or apparent authority to agree to have Dickens's deed of trust subordinated for any purpose. We find no merit to either contention.

First American contends that the parties' escrow instructions provided Ticor with actual authority to subordinate for any purpose. We disagree. The only subordination agreement mentioned in those instructions is one to be drawn by the buyers' attorney and to be furnished to the

escrow officer. That agreement is the only one that mentions the parties' intent in subordinating. The incomplete one prepared by Ticor makes no mention of intent. The escrow instructions thus do not authorize Ticor to alter the parties' agreement.

■ Nor is there any support for the contention that Ticor's escrow officer had apparent authority to alter the parties' agreement. "The touchstone of apparent authority is conduct of a principal that allows a third party reasonably to conclude that an agent is authorized to make certain representations or act in a particular way." *Miller v. Mason–McDuffie Co.*, 153 Ariz. 585, 589, 739 P.2d 806, 810 (1987). First American's escrow officer testified that she never talked to Dickens. She also testified that Masias gave her a copy of both the escrow instructions and the subordination agreement and intent. She never had a copy of the subordination agreement that was recorded. Thus, she had a copy of the only document that stated the parties' intent in subordinating, and there was no conduct by Dickens that could have led First American to conclude that Ticor's escrow officer had apparent authority to subordinate Dickens's lien for any purpose.

■ Finally, First American argues either that Dickens waived priority of the carryback deed of trust or that he agreed to subordinate it for any purpose by signing the subordination agreement that was recorded. As we noted above, the trial court found that both agreements, which were signed at the same time, must be read together as the expression of Dickens's intent in subordinating. The court also found that his intent was to subordinate only to a construction loan and that the parties' agreement was not changed by Dickens signing the shorter agreement. Those findings are "binding on this court unless they are clearly erroneous or unsupported by any credible evidence." *Imperial Litho/Graphics v. M.J. Enterprises*, 152 Ariz. 68, 72, 730 P.2d 245, 249 (App.1986). Neither is the case here. We also note that this case is not like that of *Colonial Villas, Inc. v. Title Insurance Co. of Minnesota*, 145 Ariz. 590, 703 P.2d 534 (App.1985). In that case, the parties changed their agreement and indicated that fact by initialing all pertinent places in the escrow instructions and the deed of trust.

### Action as Bona Fide Encumbrancer

■ First American's final argument with regard to the priority of Action Home Loan's lien is that Action was a bona fide encumbrancer for value and that there was no evidence it had actual knowledge that Dickens had agreed to subordinate only to a construction loan.

We disagree. First American's escrow officer testified that she had a copy of the subordination agreement and intent in her file and that she told Action's loan processor that she had it. She testified that the loan processor put her on hold and then came back on the line and told her it was all right to have a subordination agreement in the transaction. No one from Action could remember whether the agreement was actually reviewed, but there was testimony that the practice was to review such documents. Whether or not it was actually reviewed by Action personnel is of no moment, however, because the evidence was undisputed that First American had a copy of it in its file. "Notice to the agent is notice to the principal." *In re Estate of Milliman*, 101 Ariz. 54, 65, 415 P.2d 877, 888 (1966). Because it had actual notice of the agreement, Action could not have been a bona fide encumbrancer. *See Davis v. Kleindienst*, 64 Ariz. 251, 169 P.2d 78 (1946).

We conclude that the trial court properly found that Dickens's deed of trust had priority over Action's because its loan did not comply with the parties' subordination agreement and intent.

### DICKENS'S RIGHT TO RESTITUTION

■ First American next contends that the trial court improperly awarded to Dickens the amount of the payments he made to forestall foreclosure of Action's deed of trust after Masias and Spano defaulted on the loan. First American argues that Dickens is not entitled to restitution because he

made the payments either as a volunteer or because of a mistake of law. The trial court concluded that Dickens made the payments because of a mistake of fact, and we agree with that conclusion.

At the time Dickens made the payments in early 1985, it must be remembered that he had no reason not to believe that his carryback lien was in second position. Indeed, his primary intention in entering into the subordination agreement was to place it in second position. When he made the payments, Dickens had no knowledge that Action's loan was not a construction loan and that the subordination agreement had been violated. Thus, he believed it was necessary to make payments on Action's loan and to cure the default in order to protect his own lien and his interest in the property.

A mistake of fact is defined as a mistake not caused by the neglect of any legal duty on the part of the person making the mistake, but consisting in his ignorance of some fact, past or present, material to the transaction, or in his belief in the existence of some fact, material to the transaction, which does not exist.

*Justus v. Clelland,* 133 Ariz. 381, 383, 651 P.2d 1206, 1208 (App.1982). Under the circumstances of this case, we agree with the trial court that Dickens made the payments in ignorance of the facts as to the true nature of Action's loan transaction. As First American observed in its reply brief, "Dickens' lien position will not be truly known until this appeal is over." We find no merit to the contention that Dickens is not entitled to restitution because he made the payments under a mistake of law.

■ Nor do we find merit in First American's contention that neither Action nor First American was unjustly enriched. Although Action was entitled to payments on its loan, it was not entitled to receive them from Dickens. Without his payments, Action would have received nothing on its loan. Moreover, at trial, the loan officer at Action who had handled the Masias–Spano loan testified that although it was standard practice to review the purchase agreement, escrow instructions and subordination agreement when Action made a loan, he could not say whether anyone at Action had reviewed them in this case and that he did not recall having reviewed them himself.

First American stood in Action's shoes by virtue of the assignment after it paid the title insurance claims. In addition, there was ample evidence that First American was aware of the likelihood that Action's deed of trust was not in first position. Shortly after escrow closed on the loan and on the purchase transaction, First American realized there were problems with the subordination agreement and sent a new agreement to Dickens for his signature. First American's title officer testified that if he had seen the subordination agreement and intent that the escrow officer had in First American's file, he would not have insured Action's lien in first position. First American's vice president and senior counsel testified that his review of the pertinent documents led him to conclude that the subordination agreement that was recorded was worthless. He also concluded that Action's lien was in second position. Thus, we affirm the trial court's award of restitution to Dickens.

### ATTORNEY'S FEE AWARD

■ We do, however, find merit in First American's final contention on appeal. It complains because the trial court awarded Dickens attorney's fees pursuant to A.R.S. § 12–341.01(A), arguing that Dickens's suit was one to quiet title and that an attorney's fee award is thus governed by A.R.S. § 12–1103. Because Dickens did not comply with that statute, First American argues he may not recover attorney's fees, citing *Lange v. Lotzer,* 151 Ariz. 260, 727 P.2d 38 (App.1986).

Dickens argues that his suit was not one to quiet title but rather an action for declaratory relief and restitution. He also argues that it could not have been an action to quiet title because the trustee's sale had not yet been completed. We agree in part.

When Dickens filed his suit in July 1985, it was against Ticor, Action, and the benefi-

ciaries to whom Action had assigned interests in its deed of trust. The complaint alleged several causes of action against Ticor and sought declaratory relief and restitution against Action and the beneficiaries. It alleges that defendants claimed an interest in the property that was adverse to Dickens's interest. In April 1986, Dickens acquired title to the property pursuant to a trustee's sale. On October 19, 1987, Dickens filed a motion to amend the complaint. The reasons given in the motion for the amendment were to remove Ticor as a defendant, to add First American as a defendant because of the assignment of interests from Action and the beneficiaries to First American, and to allege that Dickens now owned the property. The motion was granted on October 26, 1987, the date trial began. At that point, the suit became a quiet title action.

Dickens was not able to file a quiet title action initially because at that time he had only an interest in the property, not an interest in the title. *Saxman v. Christmann,* 52 Ariz. 149, 79 P.2d 520 (1938). Once he acquired title to the property in April 1986, he also acquired the right to bring an action to quiet title. Until he filed his amended complaint in October 1987 and alleged an interest in the title, however, the complaint on file remained one for declaratory judgment.

It is undisputed that Dickens did not comply with the requirements of A.R.S. § 12–1103. Thus, he is not entitled to attorney's fees after the date of the filing of the amended complaint. *Lange v. Lotzer, supra.* He is, however, entitled to fees for the period prior to twenty days before the amended complaint was filed because this was then an action arising from a contract. A.R.S. § 12–341.01(A). We note that First American was not a party to the action prior to the filing of the amended complaint. Ordinarily, then, it would not be subject to an assessment of attorney's fees against it. However, because it paid Action and the beneficiaries pursuant to its title insurance policy, it became the assignee of their interests and is thus subject to an assessment of fees.

The judgment quieting title in Dickens and awarding him restitution is affirmed. That portion of the judgment awarding him attorney's fees for the period subsequent to twenty days before the filing of the amended complaint is reversed. The case is remanded for a determination of the amount of attorney's fees to be awarded Dickens for the period prior to twenty days before the amended complaint was filed. Each party is to bear its own costs and attorney's fees on appeal.

LIVERMORE, P.J., and
LACAGNINA, J., concur.