NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

SHEILA M. HIATT, *Petitioner/Appellant/Cross-Appellee,*

*v.*

JAMES A. HIATT, *Respondent/Appellee/Cross-Appellant.*

No. 1 CA-CV 22-0130 FC
FILED 11-1-2022

Appeal from the Superior Court in Maricopa County
No. FC2020-051879
The Honorable Lori Ash, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Dickinson Wright, PLLC, Phoenix
By Leonce A. Richard, III
*Counsel for Petitioner/Appellant/Cross-Appellee*

Padish Law Group, PLLC, Scottsdale
By James E. Padish, Erica Padish Hoebing
*Counsel for Respondent/Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Angela K. Paton and Judge Peter B. Swann joined.

---

**C R U Z**, Judge:

**¶1**     Sheila M. Hiatt ("Wife") appeals the superior court's dissolution decree and its order altering or amending the decree.  James A. Hiatt ("Husband") appeals the superior court's order denying his motion to alter or amend the judgment.  For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

**¶2**     The parties were married in 2013 and entered into a prenuptial agreement ("the Agreement") before marrying.  Under the Agreement, the parties forfeited community and spousal property rights.  Paragraph 9 of the Agreement stated that "all property, real, personal or mixed, which either [Husband] or [Wife] acquire using separate funds and subsequently places in the parties' joint, common or community names shall retain its character as the separate property of the party who purchased or acquired the property . . . ."  Paragraph 16 of the Agreement provided:

> *Division of Community Property Upon Termination of Relationship*.  Upon a dissolution, legal separation or annulment of the parties' marriage, **each party shall be awarded his or her own respective separate property**.  In the event of divorce or legal separation, if there is any joint, common or community property created for purposes other than inheritance, then the net value of that property and any joint, common and community obligations shall be **divided equally** (although specific assets themselves need not be split) after consideration of the fair Market value of any property at the date of service of a petition for dissolution of marriage, indebtedness against any property, and the tax consequences which would arise if the property were sold for its fair market value one day after the date of the divorce or legal separation.

(Emphasis added.)

¶3   In 2016, the parties purchased a property in Dana Point, California ("California home") for $5,145,482. They paid cash from their separate funds with Husband contributing 75% of the purchase price and Wife contributing 25%. The parties took title to the California home as tenants in common:

> James Andrew Hiatt as to an undivided 75% interest and Sheila Marie Hiatt, as to an undivided 25% interest, as Husband and wife as tenants in common.

¶4   In 2020, Wife petitioned to dissolve the marriage. The parties disputed how the California home should be valued and divided. After a trial, the superior court entered a decree of dissolution awarding Husband the California home, ordered the parties to obtain new appraisals of the home, and ordered Husband to pay Wife 25% of the valuation of the home.

¶5   Husband filed a motion and amended motion to alter or amend the decree pursuant to Arizona Rule of Family Law Procedure ("ARFLP") 83. After briefing, the superior court vacated the portion of the decree dealing with the California home, awarded the home to Husband, and found the value of the home on the date of the service of the petition, May 28, 2020, was $6.825 million. The court found paragraph 16 was ambiguous, and after considering the Agreement "and the credible evidence," the court rejected Wife's argument that she was entitled to half of the value of the home, reasoning that the parties did not own the California home equally. The court found that Wife was entitled to 25% of the value of the California home. Husband filed a second motion to alter or amend the judgment pursuant to ARFLP 83, which the superior court summarily denied.

¶6   Wife appealed the superior court's dissolution decree and its December 27, 2021 order altering or amending the decree. Husband appealed the superior court's order denying his second motion to alter or amend the judgment. After entry of a final judgment, we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1), (2).

## DISCUSSION

I.  Ownership Interests in the California Home

¶7   We review the superior court's interpretation of a prenuptial agreement de novo and apply principles of contract interpretation. *See Sw. Non-Profit Hous. Corp. v. Nowak*, 234 Ariz. 387, 393, ¶ 19 (App. 2014). Whether a contract is ambiguous is a question of law which we review de

novo. *In re Est. of Lamparella*, 210 Ariz. 246, 250, ¶ 21 (App. 2005) (citations omitted). We review the superior court's factual findings for clear error. *Ahwatukee Custom Ests. Mgmt. Ass'n v. Turner*, 196 Ariz. 631, 634, ¶ 5 (App. 2000).

¶8         The primary function of a court when interpreting a contract is "to enforce the meaning intended by the contracting parties." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 154 (1993). "It is axiomatic that a contract must be construed as a whole, and each and every part must be read in the light of the other parts." *Goodman v. Newzona Inv. Co.*, 101 Ariz. 470, 473 (1966) (citation omitted). We will "interpret a contract in such a way as to reconcile and give meaning to all of its terms, if reconciliation can be accomplished by any reasonable interpretation." *Gfeller v. Scottsdale Vista N. Townhomes Ass'n*, 193 Ariz. 52, 54, ¶ 13 (App. 1998). "The court must decide what evidence, other than the writing, is admissible in the interpretation process, bearing in mind that the parol evidence rule prohibits extrinsic evidence to vary or contradict, but not to interpret, the agreement." *Taylor*, 175 Ariz. at 152.

¶9         Wife argues the superior court erred in interpreting the Agreement and concluding she was entitled to 25% of the value of the California home rather than 50%. Wife points to the language in paragraph 16 of the Agreement that states the net value of the parties' "joint, common or community property" should be divided equally in the event of a divorce. She disagrees with the superior court's conclusion that paragraph 16 was ambiguous.

¶10         "Language in a contract is ambiguous only when it can reasonably be construed to have more than one meaning." *Lamparella*, 210 Ariz. at 250, ¶ 21. Here, the superior court found paragraph 16 was ambiguous because the first sentence of the paragraph provided that "each party shall be awarded his or her own respective separate property," in the event of divorce or legal separation, but the second sentence of the paragraph stated that joint, common, or community property was to be "divided equally." In addition, the court found a latent ambiguity (one not apparent from the face of the document) existed because the parties held the California property as tenants in common with Husband owning an undivided 75% interest and Wife owning an undivided 25% interest. *See In re Est. of Zilles*, 219 Ariz. 527, 530, ¶ 9 (App. 2008).

¶11         We find no error in the superior court's determination that paragraph 16 was ambiguous, and its consideration of the undisputed evidence that the parties took title to the California home as 75%/25%

tenants in common, using their separate funds. Because the superior court's interpretation of the Agreement was consistent with the intent of the parties, as evidenced by their forfeiting of their respective community and spousal maintenance rights in the Agreement itself, the court correctly decided that the parties were each entitled to receive their sole and separate interests in the California home. *See Taylor*, 175 Ariz. at 154; *Justus v. Clelland*, 133 Ariz. 381, 383 (App. 1982) (property of a co-tenant is separate in character).

II.     Valuation of California Home

**¶12**          In his cross-appeal, Husband argues the superior court abused its discretion by valuing the California home at $6.825 million rather than $5 million because the $6.825 million valuation was not supported by the evidence.

**¶13**          "An abuse of discretion exists when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence to support the decision." *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009) (citation omitted). "We must give due regard to the trial court's opportunity to judge the credibility of the witnesses." *Id.* at ¶ 16. "Our duty on review does not include re-weighing conflicting evidence . . . ." *Id.* "Even though conflicting evidence may exist, we affirm the trial court's ruling if substantial evidence supports it." *Id.* We will not substitute our discretion for that of the trial judge. *Cook v. Losnegard*, 228 Ariz. 202, 205, ¶ 11 (App. 2011).

**¶14**          Sufficient evidence supported the $6.825 valuation. Husband's real estate appraiser, Rodney Hefington, valued the California home at $5 million as of May 28, 2020. Wife's real estate appraiser, Andrew Duncan, a specialist in appraising ocean front properties in Southern California, appraised the California home and estimated the property's value was $6.825 million as of July 2, 2020. When asked whether his valuation of $6.825 million was also valid for May 28, 2020 (the date of the service of the petition), Duncan answered in the affirmative, because based on the analysis contained in his report, "the market was stable during the period between May 28th and July 2nd."

**¶15**          John Stanland, the real estate broker who brokered the parties' purchase of the California home in 2016, testified he was very familiar with the California home and its surrounding neighborhood, and that if he had listed the home on May 28, 2020, he would have listed it for $8 million plus and would expect it to sell for close to that amount, based

on sales in the neighborhood. Stanland testified that he never would have listed the home for $5 million on May 28, 2020, because that price would be "[d]ramatically" less than market value.

**¶16** The superior court found Hefington's testimony was less credible than that of Duncan and Stanland, and we defer to that credibility determination. *See Hurd*, 223 Ariz. at 52, ¶ 16. When viewed in the light most favorable to upholding the superior court's decision that the value of the California home was $6.825 million, the record supports that decision. *See id.* at ¶ 19.

III.    Expenses and Taxes

**¶17** Husband next argues the superior court erred as a matter of law by failing to include an offset for expenses and taxes in the amount he was required to pay Wife for her 25% interest ($1,706,250). In the parties' pretrial statement, Husband claimed that the total amount in expenses he had paid for the California home was $122,913, and "Wife's proportionate responsibility for these expenses is $30,728." The superior court found that under the Agreement, any expenses paid by Husband or Wife were a gift and not subject to reimbursement. Paragraph 11 of the Agreement provided:

> Unless they otherwise agree in writing before a notary, neither [Husband] nor [Wife] shall be entitled to any interest in or claim against the property . . . of the other as compensation or reimbursement for:
>
> . . .
>
> B. Contributions or payments which he or she may have made or which they may make on behalf of the other or for the benefit of the other's separate property[.]

Because Husband's payment of expenses was not subject to reimbursement under the Agreement, we find no error in the superior court's decision not to reduce Husband's payment to Wife for her interest in the California home.

IV.    Attorneys' Fees in Superior Court

**¶18** Finally, Husband argues the superior court erred by awarding Wife $10,000 in attorneys' fees. We review an attorneys' fees award for an abuse of discretion. *Iverson v. Nava*, 248 Ariz. 443, 450, ¶ 27

(App. 2020). The superior court awarded Wife attorneys' fees pursuant to A.R.S. § 25-324(A) and paragraph 29 of the Agreement, which provides:

> In the event either party is required to bring legal action against the other party to enforce any of his or her rights under this Agreement, or either party attempts to challenge or set aside any term of this Agreement, **the prevailing party** shall be entitled to recover from the other all reasonable costs and expenses incurred in bringing such an action, including, but not limited to, reasonable attorneys' fees.

(Emphasis added.) The court declined to make a finding about financial disparity under A.R.S. § 25-324 because no affidavit of financial information for Husband had been admitted into evidence, and it found that Husband acted unreasonably in offering Wife less than what she had paid for the California home. The court declined to award Wife fees relating to the parties' parenting plan, because those fees could not be awarded under the Agreement and Husband's position regarding the parenting plan had been reasonable. The $10,000 attorneys' fees award was less than one-third of the fees Wife requested. To the extent Wife was the prevailing party on the valuation issue but not the issue about the parties' interests in the home, the attorneys' fees award was reasonable. We find no abuse of discretion.

V.      Attorneys' Fees and Costs on Appeal

**¶19**        Without citation to authority, Husband requests attorneys' fees on appeal. We deny the request. *See* ARCAP 21(a)(2). Wife requests attorneys' fees and costs on appeal pursuant to A.R.S. § 25-324(A). In our discretion, we deny the request. Each party shall bear their own costs on appeal.

**CONCLUSION**

**¶20**        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA